[No. 31924. *En Banc.* April 17, 1952.]

ST. PAUL AND TACOMA LUMBER COMPANY, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 243 P. (2d) 474.

348

*The Attorney General* and *C. John Newlands, Assistant,* for appellant.

*Ben C. Grosscup* (of *Grosscup, Ambler & Stephan*), for respondent.

HILL, J.—The St. Paul and Tacoma Lumber Company, hereinafter called the company, has attacked the validity of one phase of the state use tax by a suit for refund of taxes paid. The tax in question is imposed by § 31 of the revenue act of 1935 as last amended (Laws of 1949, chapter 228, § 7, p. 829; Rem. Supp. 1949, § 8370-31) on every person who

(1) uses, (2) as a consumer, (3) tangible personal property which he has (a) purchased at retail, (b) acquired by lease, (c) acquired by gift, or (d) extracted, produced or manufactured. The tax is three per cent of the value of the article used. Exemptions are provided in § 32 (Rem. Supp. 1949, § 8370-32) for users who have paid the retail sales tax and for lessees and donees whose lessors and donors have paid the retail sales tax or the use tax on the personal property.

The company is engaged in extensive business activities in this state, which include owning timber and timberlands, logging the same, owning the necessary logging and transportation facilities, buying and selling logs, owning and operating a sawmill and a veneer and plywood plant, and selling at wholesale and retail lumber and lumber products produced and manufactured by it. In its operations it utilizes logs, lumber, and lumber products in the maintenance, repair and construction of its various facilities. In part, these materials are supplied from stocks which the company owns and would otherwise be available for sale in the regular course of its business activities.

The company seeks a refund of the taxes paid on the value of its own logs obtained from and processed in its own woods operations, and on its own lumber, lath, molding, and plywood produced or manufactured in its own sawmill and plywood plant and used for the purpose of maintaining and repairing its properties. With the exception of some few instances where such materials were used at its plywood plant, sawmill, and lumber yard, the materials on which the tax refund is sought were used in its various woods operations as distinguished from its manufacturing, wholesale, and retail operations. They were used for construction, maintenance, and repair of bunkhouses and housing for machinery, equipment, and personnel, of bridges, private roads, culverts, truck reaches, spar trees, skids, bulkheads, boom pilings, boom sticks, poles, and fence posts.

All of the taxes for which the company seeks a refund were on the use of articles which were extracted,

produced, and manufactured by the company in this state from timber cut in this state. The statute, by its terms 1, 2, and 3(d) (see first paragraph hereof), seems to provide for a tax to fit the operations of the company and others similarly situated, on the use, for their own purposes, of logs and lumber they have produced or manufactured in this state, as though it had been tailored for that purpose. Appellant, in fact, assures us that it was so tailored to avoid the effect of our decision in *Buffelen Lbr. & Mfg. Co. v. State,* 32 Wn. (2d) 40, 200 P. (2d) 509; and appellant should know, because the 1949 amendments which we now construe were presented to the legislature at the request of the tax commission.

In the *Buffelen* case, we construed Rem. Supp. 1943, § 8370-31, which, in so far as material, read as follows:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased at retail or produced or manufactured *for commercial use* or acquired by gift. . . ." (Italics ours.)

We there held that the use of "hog fuel" converted by the Buffelen company from its waste materials and used in the company's own furnaces was not a "commercial use" within the purview of that statute. The opinion was filed December 7, 1948, and in March, 1949, the amendments which we are now construing were enacted by the legislature.

The foregoing section, as amended in 1949, in so far as material, reads as follows:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state *as a consumer* any article of tangible personal property purchased at retail, or acquired by lease or by gift, or extracted or produced or manufactured *by the person so using the same.* . . ." (Italics ours.) Laws of 1949, chapter 228, § 7; Rem. Supp. 1949, § 8370-31.

Several changes were made by the 1949 amendment, but the two significant ones for our consideration are: (1) The words "for commercial use" are excised from the act and in

their stead we have "by the person so using the same," and (2) the words "as a consumer" are inserted.

■ The wisdom or social desirability of a tax which is by its terms due from every person who has a garden, on the vegetables or even the flowers he raises and uses in his own home (because he uses as a consumer tangible personal property which he has produced) is not for our consideration. It seems to us that there can be no question that by these amendments the legislature intended to reach the exact situation which we have before us. To quote again a terse and apropos statement: "The intention of the legislature is to be deduced from what it said." *In re Sanborn,* 159 Wash. 112, 118, 292 Pac. 259.

The trial court, however, permitted recovery of the tax paid, having reached the conclusions that the tax applies only to the use of articles brought from without the state, and that the company was not a consumer within the purview of the statute.

■ We do not agree with the trial court's conclusion and the company's argument that the definition of "use" in § 35 (b) of the revenue act as amended (Rem. Supp. 1949, § 8370-35 (b)) requires that, to be taxable under the section with which we are here concerned, an article must be brought from without the state. There is nothing in the statute to support such an interpretation, and numerous provisions negative it. Thus, the logical inference from that portion of § 31 of the statute as amended (Rem. Supp. 1949, § 8370-31) which reads

"This tax will not apply with respect to the use of any article of tangible personal property purchased, extracted, produced or manufactured outside this state until the transportation of such article has finally ended or until such article has become commingled with the general mass of property in this state . . . ,"

is that the tax does apply to the use of tangible personal property purchased, extracted, produced, or manufactured within the state. And subsection 32 (k) as amended (Rem. Supp. 1949, § 8370-32 (k)), which provides that the tax does not apply

"In respect to the use of fuel by the extractor or manufacturer thereof when used directly in the operation of the particular extractive operation or manufacturing plant which produced or manufactured the same,"

would be unnecessary and meaningless under the interpretation that "use" applies only to property brought in from without the state.

The company, in its argument, has stressed the use of the label "Compensating Tax" in the caption to Title IV of the revenue act. (The act contains some twenty titles, such as Title I, Introductory Provisions; Title II, Business and Occupation Tax; Title III, Tax on Retail Sales, *etc.*) We have heretofore held that the scope and extent of this tax is not controlled by the use of the words "Compensating Tax" as a label for Title IV. *Spokane v. State*, 198 Wash. 682, 89 P. (2d) 826. Although Title IV may originally have been aimed at individuals within the state who used property purchased outside the state to avoid payment of the sales tax, that purpose seems to have been frequently and considerably broadened, beginning in 1937, and the statute no longer presupposes out-of-state purchase or acquisition of the property taxed. Nowhere in the statute except in the caption to Title IV does the word "compensating" appear. This is a use tax which has been extended from time to time until by its express terms it now reaches the person who uses, as a consumer, tangible personal property he has extracted, produced, or manufactured within the state.

But the company insists that, if it did use the articles, its use was not as a consumer within the purview of the statute, and points out that it was not a "consumer" within the only definition of that word which appears in the revenue act. The definition referred to is as follows:

"For the purposes of this title [Title II, Business and Occupation Tax], unless otherwise required by the context:

. . .

"(r) The word 'consumer' means the following:

"(1) Any person who purchases, acquires, owns, holds or uses any article of tangible personal property *other than for the purpose of resale* as tangible personal property in the

regular course of business. . . . ." (Italics ours.) Laws of 1949, chapter 228, § 2, p. 816; Rem. Supp. 1949, § 8370-5.

■ We agree that the company was not a "consumer" as there defined. In order that an article may be held for resale, it must have been sold previously. It is obvious that the company did not hold for *resale* the logs, lumber, and lumber products which the company itself had produced or manufactured. If that definition were applied, the company would be held to be the consumer of such personal property merely because it owned and held the property "other than for the purpose of resale," and would be subject to tax by reason of that ownership and possession; and that clearly is not what the legislature intended. A different definition of "consumer" is "required by the context"; by its express terms, the statutory definition does not govern.

Further, § 35 (e) of Title IV as amended (Rem. Supp. 1949, § 8370-35 (e)) provides that, "in so far as applicable," the definitions in Title II shall have full force and effect with respect to taxes imposed under the provisions of Titles III and IV. It is apparent to us, and the trial court concluded, that

"The definition of 'consumer' in Sec. 5 (r) of the Act is not applicable to the definition of that word as used in Sec. 31, Title IV."

(We have heretofore held that "consumer," as defined in Title II, Business and Occupation Tax, was not intended to apply to the word "consumer" as used in Title III, Tax on Retail Sales. *Klickitat Co. v. Jenner,* 15 Wn. (2d) 373, 130 P. (2d) 880.)

■ We are convinced that the company was a consumer within the generally recognized meaning of the word, *i.e.,* "One who uses (economic) goods, and so diminishes or destroys their utilities;—opposed to producer." Webster's New Internat. Dictionary, 2d ed., 573.

It is urged that, if the meaning of "consumer" is "opposed to producer," the company cannot be said to have both produced and consumed the same articles. We see no incon-

sistency; a person can both raise potatoes and eat them, and he is no less a consumer because he originally produced them.

We are convinced that, within the generally accepted meanings of "use" and "consumer," the lumber company used as a consumer the tangible personal property on the value of which the tax was levied.

■ The company's next contention is that, if it was the legislative intent to impose such a tax, the law is unconstitutional because it does not provide for an excise tax but is an attempt to levy a tax upon persons because of their general ownership of property, and as a property tax measure it is violative of the equality and uniformity clause of Art. VII, § 1 of the state constitution as amended (see Amendment 14).

The company relies upon *Northern Pac. R. Co. v. Henneford,* 15 F. Supp. 302 (1936), a case from the eastern district of Washington. An examination of that case discloses that the language relied upon, which may be *dictum,* is based upon the false hypothesis that "use" is every act of dominion or control over property. The tax here involved was not imposed upon the company because it owned the tangible personal property, but because it used that property as a consumer. See *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P. (2d) 1056.

■ The argument that this is a property tax is patently specious. While collection of the portion of the use tax with which we are here concerned would present considerable difficulty except from those who, like the company, have accurate cost accounting systems showing the value of all property that they use as consumers, we hold that it is what it purports to be—an excise tax on the company's use, as a consumer, of property it has produced, extracted, or manufactured. The tax commission and the legislature seem to have perfected a net which will catch the large fish and let the small ones escape, entirely constitutionally, at least in so far as the present constitutional objection of lack of equality and uniformity is concerned. We do not discuss

what the late James M. Beck called the "constitutional morality" (19 A. B. A. J. 493) of such a tax.

The company's final contention is that § 31 of the revenue act, as amended by the 1949 legislature (Rem. Supp. 1949, § 8370-31), violates §§ 19, 37, and 38 of Art. II of our state constitution. This is based upon the claim that the 1949 amendments changed the scope and object of the law as enacted in 1935 and the title of the amendatory act gave no notice of such a purpose.

The title of chapter 180, p. 706, of the Laws of 1935, the original revenue act, was in part as follows: "AN ACT relating to revenue and taxation; . . . providing for the levy and collection of a tax upon the use of personal property. . . ." That the use tax as originally provided for in 1935 has been broadened by amendment from time to time, we have already indicated, but nothing has been added which is not germane to the subject of the original act.

The title of the 1949 amendatory act (Laws of 1949, chapter 228, p. 814) states that it is an act relating to revenue and taxation and denominates specifically the sections of the 1935 act, as amended, which it further amends. The title of the 1935 act was certainly broad enough to have permitted, as part of the original act, the 1949 amendments with which we are here concerned. See Sutherland, Statutory Construction (3d ed.), § 1908, where it is said:

"If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. Any matter that could validly have been enacted as part of the original act under its title is considered germane. If the title of the original act is sufficient to embrace the matter contained in the amendatory act, the sufficiency of the title of the latter will not be inquired into."

See, also, *Klickitat County v. Jenner, supra.*

We conclude that the tax paid by the company is a valid tax, and that the company has presented no basis on which a refund could be justified. The judgment of the trial court

is reversed, and the cause is remanded with instructions to dismiss the company's action for a refund.

ALL CONCUR.

May 29, 1952. Petition for rehearing denied.

