183 P.3d 1109 (2008)
G-P GYPSUM CORPORATION, Appellant,
v.
STATE of Washington DEPARTMENT OF REVENUE, Respondent.
No. 35883-2-II.
Court of Appeals of Washington, Division 2.
May 20, 2008.
Franklin G. Dinces, The Dinces Law Firm, Gig Harbor, WA, for Appellant.
Peter B. Gonick, Asst. Atty. Gen. Revenue Division, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 G-P Gypsum Corporation (Gypsum) appeals the trial court's decision denying it a refund of Tacoma city use taxes it paid for its use of natural gas in Tacoma. It argues that the statutory definition of "use" limits Tacoma's tax to situations where the taxpayer first exercises its dominion or control over the gas in Tacoma. Gypsum reasons that because it first exercised dominion over its natural gas in Washington outside Tacoma, it did not "use" the gas in Tacoma and the local tax does not apply. Because the only statutory definition of "use" supports Gypsum's argument, we reverse and remand for entry of judgment granting Gypsum the refund requested.

FACTS
¶ 2 At trial, the parties stipulated to the following facts. Gypsum manufactures wallboard in Tacoma, Washington, consuming natural gas in the process. During the time in question, Gypsum purchased natural gas at stations in Sumas and Sumner, both cities in Washington, then transported the gas to its Tacoma plant. Gypsum paid the City of Tacoma a total of $853,722.55 for the natural gas it consumed in Tacoma from January 1, 1996, to December 31, 2000.[1]
¶ 3 Gypsum sought a refund of the entire amount. After exhausting its remedies with the Department of Revenue (Department), Gypsum sued for a refund in Thurston County Superior Court. Gypsum alleged that it owed no Tacoma natural gas use taxes because it did not first take possession, dominion, or control of the gas in Tacoma.
¶ 4 The trial court denied Gypsum's request for a refund of the Tacoma natural gas use taxes, finding that even though Gypsum took dominion and control over its natural gas at the Sumas or Sumner stations where it purchased the gas, the Tacoma tax still applied because a "harmonious reading of RCW 82.14 and corresponding statutes leads to only one reasonable conclusion  that the natural gas use tax of RCW 82.14.230(1) is imposed upon the first use or the first exercise of dominion and control over natural gas within a city." Clerk's Papers (CP) at 179.
¶ 5 The issue is whether Gypsum is subject to Tacoma's local use tax for natural gas under RCW 82.14.230 even though its first *1111 act of dominion or control over the gas in Washington occurred outside the city.

ANALYSIS
¶ 6 Gypsum argues that local natural gas use taxes, just like any other use tax, may be imposed only at the place of first use within Washington, not on any subsequent use elsewhere. Thus, according to Gypsum, because it first exercised dominion or control over its natural gas in Washington outside of Tacoma, Tacoma's tax does not apply to it. Gypsum relies on the statutory definition of "use" in former RCW 82.12.010(2) (1994), various judicial and administrative decisions limiting other use taxes to "the first act" of dominion and control in Washington and not "any subsequent act," and the Department's alleged administrative practice of imposing the state and local use taxes simultaneously. It also argues that if the meaning of "use" is ambiguous, that ambiguity must be resolved in favor of the taxpayer.
¶ 7 We review a lower court's interpretation of a statute de novo. Qwest Corp. v. City of Bellevue, 161 Wash.2d 353, 358, 166 P.3d 667 (2007). Our objective in construing a statute is to ascertain and carry out the legislature's intent. Qwest Corp., 161 Wash.2d at 363, 166 P.3d 667 (quoting Arborwood Idaho, LLC v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004)).
A. Statutory Background
¶ 8 This case concerns the interplay between two chapters of Washington's revenue code, chapters 82.12 and 82.14 RCW.
¶ 9 Chapter 82.12 RCW concerns state use taxes. RCW 82.12.022(1) levies "a use tax for the privilege of using natural gas . . . within this state as a consumer." Former RCW 82.12.010(2)[2] provided that for the purposes of chapter 82.12 RCW, the terms "`[u]se,' `used,' `using,' or `put to use' shall have their ordinary meaning, and shall mean the first act within this state by which the taxpayer takes or assumes dominion or control over the article of tangible personal property[[3]] (as a consumer) and include installation, storage, withdrawal from storage . . . or any other act preparatory to subsequent actual use or consumption within this state."
¶ 10 Chapter 82.14 RCW authorizes local use taxes. RCW 82.14.230(1) authorizes cities to levy "a use tax for the privilege of using natural gas . . . in the city as a consumer." The term "use" is not defined, but former RCW 82.14.020(7) (1983)[4] provides that "[t]he meaning ascribed to words and phrases in chapter[ ] 82.12 RCW, . . . insofar as applicable, shall have full force and effect with respect to taxes imposed under authority of this chapter." (Emphasis added.)
B. Application
¶ 11 We begin our review with the statutory language itself; if the statute's meaning is plain on its face, we apply that meaning. Tingey v. Haisch, 159 Wash.2d 652, 657, 152 P.3d 1020 (2007) (quoting State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005)). We discern plain meaning not only from the statutory language but also from the context surrounding the statute, related provisions, and the statutory scheme as a whole. Tingey, 159 Wash.2d at 657, 152 P.3d 1020. Only if a provision remains susceptible to more than one reasonable interpretation will we employ tools of statutory construction to discern its meaning. Tingey, 159 Wash.2d at 657, 152 P.3d 1020 (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 12, 43 P.3d 4 (2002)).
1. "Insofar As Applicable"
¶ 12 The parties first disagree about the extent to which the definition of "use" in former RCW 82.12.010(2) is "applicable" to local natural gas use taxes. Gypsum argues that the definition is fully applicable to local taxes. The Department maintains that the definition of "use" in chapter 82.12 RCW does not apply to local taxes and that we *1112 should define "use" under the local natural gas tax as the place of consumption, not first dominion or control. We are bound to apply legislative definitions included in a statute, Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004); thus, we focus on the meaning of "insofar as applicable" in former RCW 82.14.020(7).
¶ 13 Gypsum argues that the plain language of former RCW 82.14.020(7) applies the statutory definition of "use" to the local natural gas tax, notwithstanding the phrase "insofar as applicable," because neither the state nor local natural gas use tax statute precludes the definition from applying. Therefore, the definition must apply equivalently to the same "use" event as for any other use tax: the first taking of dominion and control in Washington.
¶ 14 The Department relies on St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 353, 243 P.2d 474 (1952), for the proposition that a court may use the phrase "insofar as applicable" to reject a statutory definition and use the "generally understood meaning" of a term when the statutory definition "does not make sense" in that context. Br. of Resp't at 14. In St. Paul & Tacoma Lumber Co., as here, one title of the revenue code provided a series of statutory definitions, and another title incorporated those definitions "in so far as applicable." See St. Paul & Tacoma Lumber Co., 40 Wash.2d at 353, 243 P.2d 474. But St. Paul differed from this case in one critical respect: the definition statute itself stated that it applied "unless otherwise required by the context." St. Paul & Tacoma Lumber Co., 40 Wash.2d at 352, 243 P.2d 474. The court held that the statutory definition was therefore not "applicable" when a different definition was "required by the context" because "by its' express terms, the statutory definition does not govern." St. Paul & Tacoma Lumber Co., 40 Wash.2d at 353, 243 P.2d 474.
¶ 15 Here, by contrast, no statute precludes the definition of use in RCW 82.12.010 from applying to the local gas use tax authorized by chapter 82.14 RCW. The Department sets out in some detail the legislature's intent in creating the tax  to replace the local utility tax revenue cities collected from local distributors who sold to consumers like Gypsum. But we do not resort to extrinsic sources in interpreting a statute unless we find more than one reasonable interpretation of the statutory language. See Tingey, 159 Wash.2d at 657, 152 P.3d 1020. And we cannot add language to an unambiguous statute even if we believe that the legislature intended something other than what it expressed. Steen, 151 Wash.2d at 518, 91 P.3d 864 (citing State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002)). The Department essentially asks us to craft a rule defining "use" to meet the legislature's intent in passing chapter 82.14 RCW. And this we cannot do. Rather, we apply the "use" definition in chapter 82.12 RCW because nothing in chapters 82.12 or 82.14 RCW precludes it, both chapters deal with use taxes, and chapter 82.14 RCW directs us to apply chapter 82.12 RCW "as applicable."
2. "Ordinary Meaning"
¶ 16 The concurrence discusses the presence of the "ordinary meaning" language in former RCW 82.12.010(2), noting that the "ordinary meaning" of the term "use" would be "consumption." See Concurrence at 1113. But the concurrence's resort to a dictionary definition is premature where the statute specifically defines "use" as "the first act [of] dominion or control." See Dahl-Smyth, Inc. v. City of Walla Walla, 148 Wash.2d 835, 842-43, 64 P.3d 15 (2003) (only where no statutory definition is provided does the court refer to a word's common meaning in the dictionary); see also State v. Lilyblad, 163 Wash.2d 1, 9, 177 P.3d 686 (2008) ("All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary."). The meaning of words in a statute may be indicated or controlled by those with which they are associated. Lilyblad, 177 P.3d at 690 (quoting State v. Roggenkamp, 153 Wash.2d 614, 623, 106 P.3d 196 (2005)); see also City of Seattle v. Dep't of Labor & Indus., 136 Wash.2d 693, 699, 965 P.2d 619 (1998) (rule of ejusdem generic provides that specific terms modify or restrict the application of general terms where both are used in sequence). We also note that *1113 because use taxes are imposed only once, a precise rather than "expansive" definition of the triggering event is required. Concurrence at 1114; see WAC 458-20-178(3). Under these circumstances, we have no choice but to apply the legislature's explicit definition over its vague reference to "ordinary meaning."
3. "First Act Within This City"
¶ 17 The Department argues finally that the appropriate definition for "use" as it pertains to the local tax is the consumer's first use in the city; thus, when Gypsum transports the gas into the city, it owes the city tax. Such an interpretation is contrary to the language of former RCW 82.12.010(2), which defined "use" as the "first act within this state by which the taxpayer takes or assumes dominion or control." (Emphasis added.) Moreover, the Department's interpretation would make the gas taxable in every city through which Gypsum transports it, a result that runs counter to the legislature's mandate that state and local sales and use taxes are to be uniform and collected at the same time and place.[5] Former RCW 82.14.070 (1970).
¶ 18 In conclusion, we find no ambiguity in chapters 82.12 and 82.14 RCW regarding the meaning of when a taxable use occurs. Applying the only statutory definition of "use" in either chapter, Gypsum first exercised dominion and control over the natural gas outside the City of Tacoma during the period in question. Thus, Tacoma's use tax did not apply.
¶ 19 We reverse and remand for entry of judgment granting Gypsum the refund requested.
I concur: BRIDGEWATER, J.
HUNT, J. (Concurring).
¶ 20 I agree with my colleagues that Tacoma improperly taxed Gypsum. But I write separately to clarify the statutory definition of "use" in former RCW 82.12.010(2) (1994).
¶ 21 The version of former RCW 82.12.010(2) in effect during the period of contested taxation here, January 1, 1996, to December 31, 2000, provided the following definition of "use":
"Use," "used," "using," or "put to use" shall have their ordinary meaning, and shall mean the first act within this state by which the taxpayer takes or assumes dominion or control over the article of tangible personal property (as a consumer), and include installation, storage, withdrawal from storage, or any other act preparatory to subsequent actual use or consumption within this state.
Former RCW 82.12.010(2) (emphasis added).[6]
¶ 22 In essence, the majority adopts Gypsum's argument and holds that for purposes of imposing a use tax on natural gas, the Legislature limited former RCW 82.12.010(2)'s definition of "use" to mean only "the first taking of dominion and control in Washington." Majority at 1112. In my view, the majority's narrow reading of former RCW 82.12.010(2)'s definition is contrary to the statute's plain language because it ignores the preceding "ordinary meaning" of "use" in the first clause of the statute. In *1114 contrast, the plain language of the statute provides a more expansive definition, including as a means of taking or assuming "dominion and control" that "use . . . shall have [its] ordinary meaning." Former RCW 82.12.010(2).

I. STATUTORY CONSTRUCTION
¶ 23 When interpreting statutory language, our goal is to carry out the legislature's intent. Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 148, 3 P.3d 741 (2000). If a statute is clear on its face, we derive the legislature's intent from the plain language and ordinary meaning of the statute alone. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005).[7] Nonetheless, we must avoid unlikely, absurd, or strained results. Berrocal, 155 Wash.2d at 590, 121 P.3d 82. See also Nelson Alaska Seafoods, Inc. v. Dep't of Revenue, Wash.App., 177 P.3d 1161, 1164-65 (2008).

II. PLAIN LANGUAGE

A. "Ordinary Meaning"
¶ 24 The plain language of the first clause of former RCW 82.12.010(2) expressly encompasses the ordinary meaning of the word "use": "`Use,' `used,' `using,' or `put to use' shall have their ordinary meaning[.]" Where, as here, the legislature "has not specifically defined" the "ordinary meaning" of "use,"[8] we adopt its "common meaning," which "may be determined by referring to a dictionary." Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 239, 110 P.3d 1132 (2005) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1005 (1971)) (citing Dahl-Smyth, Inc. v. City of Walla Walla, 148 Wash.2d 835, 842-43, 64 P.3d 15 (2003)). The relevant dictionary definitions of "use" include, "[T]o put into action or service: have recourse or employment of: EMPLOY," and "to expend or consume by putting to use." WEBSTER'S, supra at 2523-24.
¶ 25 Thus, the legislature has not restricted former RCW 82.12.010(2)'s definition of "use" to occur only when a party establishes "dominion and control" over natural gas. Rather, "use" can also occur, for example, when a customer "consumes" natural gas, which may in retail customer circumstances also constitute that customer's first exercise of "dominion and control" over the gas.
¶ 26 Here, however, regardless of the applicable definition of "use," I agree with the majority that Gypsum "used" the natural gas at issue when it first exercised dominion and control over the gas after it entered the state near Sumas.[9] Former RCW 82.12.010(2). Accordingly, because Gypsum had already "used" the natural gas at Sumas before transporting it to its Tacoma manufacturing plant, Gypsum could not "use" it again within Tacoma's city limits. Therefore, there was no taxable event for which Tacoma could impose and collect a use tax.[10]
*1115 ¶ 27 Accordingly, I concur in the majority's holding that Tacoma improperly collected a use tax from Gypsum and that Tacoma must refund this tax to Gypsum.
NOTES
[1] Local use taxes are collected by the state Department of Revenue (Department) and then distributed to the local governments under RCW 82.14.050. See also RCW 82.14.230(5).
[2] Now codified in RCW 82.12.010(5)(a) with virtually identical language.
[3] Neither party disputes that natural gas is "tangible personal property."
[4] Now codified in RCW 82.14.020(9) with identical language.
[5] The Department argues that RCW 82.14.070 does not apply to the local natural gas use tax because it is limited to "local sales and use taxes." We disagree; RCW 82.14.070 applies to "any local sales and use tax adopted pursuant to [chapter 82.14 RCW]," and the local natural gas tax is a use tax adopted under RCW 82.14.230. Former RCW 82.14.070 (emphasis added); see also RCW 82.14.030(1) ("except as provided in RCW 82.14.230, this sales and use tax shall not apply to natural or manufactured gas") (emphasis added). The legislature therefore intended the local natural gas use tax to be "as consistent and uniform as possible" with any other use tax. Former RCW 82.14.070.
[6] Chapter 14 of RCW 82 authorizes local use taxation. Chapter 12 of RCW 82 concerns state use taxes. RCW 82.14.020 (local tax) provides that the definition of "use" under chapter 12 (state tax) also applies to local use taxes, such that the "ordinary meaning" of "use" governs Tacoma city taxes as well as state taxes. See former RCW 82.14.020(7) (1983), which provided:

Definitions  Where retail sale occurs
The meaning ascribed to words and phrases in [chapter 82.12 RCW] . . . insofar as applicable, shall have full force and effect with respect to taxes imposed under authority of this chapter.
(recodified at RCW 82.14.020(9)).
[7] "In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute." Simpson Inv. Co., 141 Wash.2d at 149, 3 P.3d 741. We must view each provision in relation to other provisions and harmonize, if possible, to insure proper construction of every provision. Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 238-39, 110 P.3d 1132 (2005) (We "begin with the statute's plain language and ordinary meaning," but we also look to "the applicable legislative enactment as a whole, harmonizing its provisions by reading them in context with related provisions and the statute as a whole.")
[8] Insofar as the majority asserts that the second clause of the statute, "the first act within this state by which the taxpayer takes or assumes dominion or control," provides a specific statutory definition of "use," I respectfully disagree. Majority at 1111.
[9] And Gypsum paid a state use tax on the natural gas, under former RCW 82.12.022 (1994), when Gypsum first exercised this dominion and control near Sumas.
[10] In addition, in my view, the legislative intent behind former RCW 82.12.010(2) and 82.14.020(7) are not consistent. In order to ameliorate the loss of revenue to cities caused by federal legislation, our state legislature expressly gave cities the option of taxing natural gas "used" within city limits, but only if that is the taxpayer's first act of use within the State. Former RCW 82.12.010(2); RCW 82.14.230(1); former RCW 82.14.020(7). See, e.g. the following "HISTORICAL AND STATUTORY NOTE" to RCW 82.12.022:

Intent-1989 c 384: "Due to a change in the federal regulations governing the sale of brokered natural gas, cities have lost significant revenues from the utility tax on natural gas. It is therefore the intent of the legislature to adjust the utility and use tax authority of the state and cities to maintain this revenue source for the municipalities and provide equality of taxation between intrastate and interstate transactions." [1989 c 384 § 1.]
Thus, it appears, for example, that if Northwest Pipelines had taken control over the natural gas. at Sumas and piped it directly to Gypsum's Tacoma plant, the City of Tacoma could have taxed Gypsum's first use of and exercise of control over the natural gas because it occurred within city limits. Otherwise, however, Tacoma cannot take advantage of this ameliorating statute.
As Tacoma contends, however, the legislature may have intended to create two taxable events under the circumstances present here  the first event, subject to the state use tax, when Gypsum first exercised dominion and control over the gas at Sumas; and the second event, subject to a municipal use tax, when Gypsum consumed the gas at its Tacoma plant. But if this was the legislature's intent in enacting the ameliorating use tax statute for municipalities, then it is for the legislature, not the court, to amend the statutory scheme to allow cities to impose and to collect such natural gas use taxes.