[No. 81995-5.   En Banc.]
Argued November 17, 2009.   Decided July 29, 2010.

G-P Gypsum Corporation, *Respondent*, v. The Department of Revenue, *Petitioner*.

*Robert M. McKenna, Attorney General,* and *Peter B. Gonick, Assistant,* for petitioner.

*Franklin G. Dinces* (of *The Dinces Law Firm*) and *Geoffrey P. Knudsen,* for respondent.

*Elizabeth A. Pauli* and *Debra E. Casparian* on behalf of City of Tacoma, amicus curiae.

*Kent C. Meyer* on behalf of City of Seattle, amicus curiae.

*Sheila M. Gall* on behalf of Association of Washington Cities, amicus curiae.

*Judith M. Zeider* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

¶1 STEPHENS, J. — This case presents an issue of statutory construction requiring us to determine whether G-P Gypsum Corporation (Gypsum) "uses" natural gas for the purpose of a local use tax statute. We reverse the Court of Appeals and hold that Gypsum does "use" natural gas within Tacoma city limits and is therefore subject to Tacoma's local use tax.

## FACTS AND PROCEDURAL HISTORY

¶2 Gypsum manufactures wallboard at its Tacoma plant. In its operations, it consumes natural gas within Tacoma city limits. Gypsum purchases its natural gas from various brokers, taking delivery at two points: a pipeline hub outside the city of Sumas in Whatcom County and a pipeline hub outside the city of Sumner in unincorporated Pierce County. Gypsum exercises dominion and control over the gas when it reaches the stations. From the stations, the gas Gypsum anticipates needing for manufacturing activities is transported to its Tacoma plant; excess gas might be sold to third parties with delivery to those parties occurring at one of the stations. Gas that is transported to Gypsum's Tacoma plant is burned in the production of wallboard.

¶3 For several years, Tacoma assessed a brokered natural gas (BNG) tax against Gypsum for use of natural gas within city limits, pursuant to RCW 82.14.230. Gypsum claimed a refund of the tax for the period January 1, 1996 to

December 31, 2001. It argued that under former RCW 82.12.010(2) (1994), "use" means the first instance of dominion and control in the state, and because Gypsum initially takes dominion and control of the gas outside Tacoma city limits, Tacoma has no taxing authority over it.

¶4 Gypsum's refund request was directed to the Department of Revenue (Department) because the Department administers the local BNG tax for municipalities. The Department denied the refund request.

¶5 After exhausting its administrative remedies, Gypsum filed a complaint for a tax refund in Thurston County Superior Court. At a bench trial, the superior court held in favor of the Department, reasoning that the definition of "use" under chapter 82.12 RCW, governing state use taxes, did not apply for the purposes of local use tax under chapter 82.14 RCW. Gypsum appealed. Division Two of the Court of Appeals reversed, concluding that the plain language of the statutes at issue resolves the case in Gypsum's favor. *G-P Gypsum Corp. v. Dep't of Revenue*, 144 Wn. App. 664, 671, 183 P.3d 1109 (2008). The Department petitioned for review by this court, which we granted. *G-P Gypsum Corp. v. Dep't of Revenue*, 165 Wn.2d 1023, 203 P.3d 380 (2009). The Department is supported by amici city of Seattle, Association of Washington Cities, city of Tacoma, and the Washington State Association of Municipal Attorneys.

## ANALYSIS

¶6 We begin with the texts of the relevant statutes. Under chapter 82.14 RCW, municipalities may impose a BNG use tax:

> The governing body of any city, while not required by legislative mandate to do so, may, by resolution or ordinance for the purposes authorized by this chapter, fix and impose on every person a use tax for the privilege of using natural gas or manufactured gas *in the city* as a consumer.

RCW 82.14.230(1) (emphasis added). "Use" is not defined in chapter 82.14 RCW, which deals with local retail and use

taxes. However, "use" is defined in chapter 82.12 RCW, which deals with state use taxes:

> "Use," "used," "using," or "put to use" shall have their ordinary meaning, and shall mean the first act *within this state* by which the taxpayer takes or assumes dominion or control over the article of tangible personal property (as a consumer), and include installation, storage, withdrawal from storage, or any other act preparatory to subsequent actual use or consumption within this state.

Former RCW 82.12.010(2) (emphasis added). By statute, the definitions in chapter 82.12 RCW are made applicable to chapter 82.14 RCW, but this incorporation of definitions is limited:

> The meaning ascribed to words and phrases in chapter[ ] . . . 82.12 RCW, as now or hereafter amended, *insofar as applicable*, shall have full force and effect with respect to taxes imposed under authority of this chapter.

Former RCW 82.14.020(7) (1983) (emphasis added).

¶7 The question here is what part of the definition of "use" in former RCW 82.12.010(2), if any, is applicable to chapter 82.14 RCW. Gypsum focuses on the language defining "use" as the first act of dominion and control. While Gypsum does not dispute that it consumes natural gas within Tacoma city limits, Clerk's Papers at 84, it claims that the use tax authorized under RCW 82.14.230(1) does not apply to it because its "use" of the gas as defined by former RCW 82.12.010(2) occurs before the gas is brought within the city limits. It reads "use" as restricted to the first act of exercising dominion and control over the gas within the state. Because Gypsum first takes possession of the gas in Whatcom County or unincorporated Pierce County, it argues no use (i.e., first act) occurs in Tacoma subjecting it to the city's use tax.

¶8 The Department counters that the definition of "use" under former RCW 82.12.010(2) must be read in harmony with former RCW 82.14.020(7), which states that the definitions under chapter 82.12 RCW apply to chapter 82.14

RCW only insofar as they are applicable. The phrase "in the state" in the definitional statute is not applicable to a *local* use tax, which is concerned only with use that occurs within the municipality. Further, the Department argues, the definition of "use" in former RCW 82.12.010(2) includes the ordinary meaning of "use" as well as the "dominion and control" provision upon which Gypsum relies. The ordinary meaning of "use" includes consumption, and Gypsum indisputably consumes the gas. Thus, contends the Department, the only applicable definition of "use" under RCW 82.12-.010(2) for the purposes of chapter 82.14 RCW is its ordinary meaning: consumption. In support of its reading of the statutes at issue, the Department offers an overview of the legislative purpose behind the local gas use tax. Suppl. Br. of Pet'r at 5-9; Br. of Resp't at 8-11, 15-18.

¶9 "The meaning of a statute is a question of law reviewed de novo." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In any question of statutory construction, we strive to ascertain the intention of the legislature by first examining a statute's plain meaning. *Id.* at 9-10. " ' "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." ' " *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996))).

¶10 Turning first to the question of the purpose of the local BNG tax, the Court of Appeals declined to consider any expression of legislative intent, stating that it could not "resort to extrinsic sources in interpreting a statute unless we find more than one reasonable interpretation of the statutory language." *Gypsum*, 144 Wn. App. at 670. We have previously criticized such a crabbed notion of statutory interpretation, holding instead that a statute's plain meaning should be "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell*,

146 Wn.2d at 11. Moreover, an enacted statement of legislative purpose is included in a plain reading of a statute. *C.J.C. v. Corp. of Catholic Bishop*, 138 Wn.2d 699, 712-14, 985 P.2d 262 (1999) (plurality opinion) (relying upon legislature's adopted finding and intent provision in construing definitional statute).[1]

¶11 Here, we have the benefit of an enacted statement of legislative purpose passed as part of the session law that became RCW 82.14.230(1). LAWS OF 1989, ch. 384, § 1. This statement makes it clear the legislature intended to grant cities the authority to impose a use tax on entities that purchase natural gas outside city limits but consume it within city limits.

> Due to a change in the federal regulations governing the sale of brokered natural gas, cities have lost significant revenues from the utility tax on natural gas. It is therefore the intent of the legislature to adjust the utility and use tax authority of the state and cities to maintain this revenue source for the municipalities and provide equality of taxation between intrastate and interstate transactions.

LAWS OF 1989, ch. 384, § 1. The change in federal regulations to which the provision refers was deregulation of the mechanism of sale for natural gas. As the Department explains, after deregulation, consumers began to purchase gas directly from producers instead of local distribution companies. Suppl. Br. of Pet'r at 6. That meant localities lost revenue on gas sales because when gas was purchased from a local distribution company, the sales were subject to a state public utility tax and, for sales of gas within a city, to a local public utility tax. *Id.* When consumers stopped buying gas from local distributors, their purchases were no longer subject to the state or local public utility tax. *Id.*

¶12 In order to remedy this situation, the legislature gave cities the authority under RCW 82.14.230(1) to tax the

---

[1] Four justices signed the lead opinion in *C.J.C.* Justice Madsen's concurrence/ dissent did not take issue with the lead opinion's construction of the definitional statute. *C.J.C.*, 138 Wn.2d at 729-30 (Madsen, J., concurring/dissenting).

use of natural gas rather than its sale, thereby allowing them to obtain tax revenues even when a gas user purchases gas from an entity other than a local distributor or public utility. The Department is correct that this case presents the factual situation the legislature sought to address: a manufacturer, which before deregulation would have purchased natural gas from a local distribution company, instead purchases gas from an out-of-state broker, thus avoiding the local utility tax. Suppl. Br. of Pet'r at 8-9. The Court of Appeals erred when it ignored the enacted statement of legislative purpose behind RCW 82.14.230(1).

¶13 When we properly consider the legislative purpose behind the local BNG tax in construing the plain meaning of the statutes at issue, it is clear that the local BNG gas tax holds a special position within the universe of Washington's use tax provisions. It is a tax that is designed to mimic a locality's public utility tax. *See* former WAC 458-20--17902(2) (1990).[2] By its nature, then, the taxing authority granted by RCW 82.14.230(1) must contemplate a taxable event that occurs *within the locality*.

¶14 The definition of "use" contained in former RCW 82.12.010(2) is relevant to the local BNG tax only "insofar as applicable." Former RCW 82.14.020(7). We have previously found the language "insofar as applicable" restricts the application of a definitional statute from one tax chapter to another. *St. Paul & Tacoma Lumber Co. v. State*, 40

---

[2] Former WAC 458-20-17902(2) reads:

The distribution and sale of natural gas in this state is generally taxed under the state and city public utility taxes. With changing conditions and federal regulations, it is now possible to have natural gas brokered from out of the state and sold directly to the consumer. If this occurs and the public utility taxes have not been paid, RCW 82.12.022 (state) and RCW 82.14.230 (city) impose a use tax on the brokered natural gas at the same rate as the state and city public utility taxes.

This regulation was in effect during the tax period at issue here. The language quoted appears in the current version of WAC 458-20-17902, but at subsection (3) instead of subsection (2).

Wn.2d 347, 353, 243 P.2d 474 (1952).[3] The portion of the "use" definition that confounded the Court of Appeals—"the first act within this state by which the taxpayer takes or assumes dominion or control"—plainly has limited application: it is addressed to the *State's* taxing authority insofar as it speaks to the first act of dominion and control "within the state." Former RCW 82.12.010(2). This definition is not applicable to RCW 82.14.230(1) because it contemplates a taxable event that does not relate to a *municipality's* taxing authority, which is necessarily limited to uses within its jurisdiction.

¶15 Instead, we look to the ordinary meaning of "use," a definitional basis also recognized in former RCW 82.12-.010(2). "Use" ordinarily means to "consume." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523-24 (2002). Gypsum does not dispute that it consumes natural gas in its manufacturing process; therefore, it uses natural gas in the city of Tacoma as the term "use" is ordinarily understood. We hold that the tax levied against Gypsum under RCW 82.14.230(1) was proper.

¶16 In so holding, we recognize that it is unusual for corresponding state and local taxes to be triggered by different taxable events.[4] But that is exactly what the

---

[3] *St. Paul* considered the applicability of a statutory definition of "consumer" in the business and occupation (B&O) tax chapter with respect to a provision in the use tax chapter. *St. Paul*, 40 Wn.2d at 352-53. The Court of Appeals rejected the Department's reliance on *St. Paul* because in addition to the words " ' in so far as applicable ' " in the use tax chapter, the definitional statute at issue there contained the phrase " ' "unless otherwise required by the context." ' " *Gypsum*, 144 Wn. App. at 669-70 (quoting *St. Paul*, 40 Wn.2d at 353; Rem. Rev. Stat. § 8370-35(e) (Supp. 1949); LAWS OF 1949, ch. 228, § 2). The Court of Appeals found that the absence of these words in the statutes here was determinative. *Id.* But this overlooks the fact that *St. Paul* set forth two distinct reasons for declining to apply the B&O tax definition of consumer to the use tax provision in question, one premised on the "unless otherwise required by the context" language and the other premised on the "in so far as applicable" language. *St. Paul*, 40 Wn.2d at 352-53. Moreover, the phrase "in so far as applicable" by itself requires an examination of the contexts of the relevant statutes.

[4] The Court of Appeals ruled against the Department in part because it concluded that the tax at issue here must occur simultaneously with a taxpayer's "first [use] within the state" under former RCW 82.12.010(2) pursuant to the local sales and use tax uniformity provision, former RCW 82.14.070 (1970). This

legislature intended here, assuming Gypsum is correct that the taxable event for the purposes of the state BNG tax is the point at which the taxpayer first takes dominion and control of the gas in the state.[5] In any case, it is clear that the legislature created the local BNG tax to stand in for a local public utility tax when an industrial user purchases its gas from a broker outside the city where it does business. The statute authorizing the tax must be construed to give effect to this purpose. If we were to apply the disputed portion of the definitional statute to Gypsum's activities, then every purchaser of natural gas could simply avoid a local tax by purchasing gas in an unincorporated area of the state, rendering RCW 82.14.230(1) ineffective to accomplish its purpose. We cannot endorse an interpretation of the statutes at issue that leads to this absurd result. *J.P.*, 149 Wn.2d at 450.[6]

## CONCLUSION

¶17 The legislature expressed its clear purpose to authorize municipalities to tax entities for the use of natural gas within city limits. In light of this stated purpose, the

provision mandates "that state and local sales and use taxes are to be uniform and collected at the same time and place." *Gypsum*, 144 Wn. App. at 671. The Court of Appeals was mistaken however in concluding that former RCW 82.14.070 applies here. The local sales and use tax and local BNG tax are entirely separate tax schemes that serve different purposes from one another, complement different taxes, impose different rates, contain different deductions and credits, and are imposed by unrelated taxing authorities. Suppl. Br. of Pet'r at 17 (comparing RCW 82.14.230 with RCW 82.14.030). Thus, it is not necessary, nor even reasonably possible, for the local sales and use tax uniformity provision to dictate the timing of the local BNG tax.

[5] In point of fact, we take no position on what constitutes a taxable event under the state BNG tax. That question was not litigated below and it is not before us now. Suppl. Br. of Pet'r at 15 n.8.

[6] The dissent claims that our opinion sets up a tension between localities that levy the local BNG tax, asking how this case is to be resolved under our holding if the gas were first used in Sumner or Sumas. Dissent at 316-17. There is no such tension under our holding that requires the ordinary meaning of "use" be applied to a local BNG tax. Because the ordinary meaning of "use" includes burning or consuming the gas, gas use will be taxed only once because gas can be burned or consumed only once. Contrary to the dissent's fears, the locality in which the gas is consumed or burned will be the only locality that receives the benefit of the tax.

ordinary meaning of "use" is the part of the definition of "use" in former RCW 82.12.010(2) that is applicable to the local BNG tax. Applying the ordinary meaning of "use," Gypsum's consumption of natural gas within Tacoma city limits was a use of gas subjecting it to the local gas use tax. Accordingly, Gypsum is not entitled to a refund for the tax period at issue, and we reverse the Court of Appeals.

MADSEN, C.J., and CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶18 SANDERS, J. (dissenting) — Between 1996 and 2000, the city of Tacoma collected $853,722.55 in natural gas use taxes from G-P Gypsum Corporation (Gypsum), a corporation that manufactures wallboard within the city limits. The question before us is whether Tacoma's local tax for natural gas use applies to Gypsum, even though Gypsum first used its natural gas outside the city's boundaries. Because the plain language of the tax statutes compels us to affirm the Court of Appeals, I dissent. *See G-P Gypsum Corp. v. Dep't of Revenue*, 144 Wn. App. 664, 183 P.3d 1109 (2008), *review granted*, 165 Wn.2d 1023, 203 P.3d 380 (2009).

¶19 This matter turns on statutory construction. Our "fundamental objective in construing a statute is to ascertain and carry out the legislature's intent." *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). We first look to the plain language of a statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language is subject to only one interpretation, our inquiry is at an end. *Id.* When a " 'statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007) (internal quotation marks omitted) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). If the statute remains subject to multiple interpretations after analyzing the plain

language, it is ambiguous. *Armendariz*, 160 Wn.2d at 110. "A statute is ambiguous only if susceptible to two or more reasonable interpretations, but a statute is not ambiguous merely because different interpretations are conceivable." *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). Only if a statute is ambiguous may we look to the legislative history and the circumstances surrounding the statute's enactment to discern legislative intent. *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

¶20 Cities may "fix and impose on every person a use tax for the privilege of using natural gas or manufactured gas in the city as a consumer." RCW 82.14.230(1). Here the legislature defined "use" as follows:

> "Use," "used," "using," or "put to use" shall have their ordinary meaning, and shall mean the *first act* within this state by which the taxpayer *takes or assumes dominion or control* over the article of tangible personal property (as a consumer), and include installation, storage, withdrawal from storage, or any other act preparatory to subsequent actual use or consumption within this state.

Former RCW 82.12.010(2) (1994) (emphasis added). Former RCW 82.14.020(7) (1983), in turn, suggests that "[t]he meaning ascribed to words and phrases in . . . 82.12 RCW, as now or hereafter amended, insofar as applicable, shall have full force and effect with respect to taxes imposed under authority of this chapter."

¶21 The majority notes that Gypsum first uses gas at points outside the city of Sumner or Sumas, where it imports the gas from out of state. Majority at 306. "Gypsum exercises dominion and control over the gas[, i.e., uses the gas] when it reaches the stations." *Id.* The majority nonetheless asserts that the definition of former RCW 82.12-.010(2) does not apply. It tries to reconcile the problems with this position by misconstruing three words in former RCW 82.14.020(7): "insofar as applicable." Majority at 311-12. The majority latches onto this phrase the same

way a drowning sailor latches onto even the smallest piece of flotsam—desperately.

¶22 Unfortunately, these three words do not impact the analysis. They are a distraction only. The dictionary defines "applicable" to mean "capable of being applied : having relevance" and "fit, suitable, or right to be applied : APPROPRIATE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (2002). It is synonymous with "RELEVANT." *Id.*

¶23 Accordingly the phrase "insofar as applicable" means the use statute has "full force and effect" if the "words and phrases" are "relevant" to the subject matter. Former RCW 82.14.020(7). Former RCW 82.12.010(2) is squarely relevant here. It is undisputed that Gypsum's first act of dominion or control over the natural gas within Washington occurs near Sumner or Sumas. By the plain meaning of the statute, then, Gypsum's first act of using natural gas within the state occurs outside Tacoma's boundaries.

¶24 The plain language of the statute leaves no wiggle room. It certainly does not permit the gaping breach created by the majority today. The majority rewrites the statutes to meet its interpretation of legislative intent but, in doing so, alters the statutes so drastically that they no longer achieve what they say. In fact, if followed to its logical end, the majority's contortion of these three words swallows the statute entirely. While on these facts Gypsum does not take control in a city, it is eminently conceivable that consumers could take delivery of natural gas in one city and consume it in another. The majority's interpretation of "use" sets cities on a collision course. Let us assume Gypsum took delivery in another city. What if the city where the gas was delivered imposed a use tax as well? Would Tacoma's tax trump the others? Would both taxes prevail? If so Gypsum would be double-taxed for its "consumption" in Tacoma and its "dominion or control" at the point of delivery—both "uses." *See* RCW 82.14.230(1); former RCW 82.12.010(2). The majority's approach is unsustainable because it dismantles the notion of first use, which is the crux here.

¶25 This case is much simpler than the majority makes it. Gypsum's use of natural gas, i.e., its "first act within this state by which the taxpayer takes or assumes dominion or control," occurs outside Sumner or Sumas. The majority goes out of its way to protect Tacoma's tax-revenue stream when the statutes favor points of first use. In most cases, points of first use will occur where the natural gas is consumed.[7] But in cases like Gypsum's, where the corporation assumes dominion or control outside Tacoma, another city could reap the use tax revenue. On these facts Gypsum's first use occurs outside Tacoma. The city's collection of use taxes, accordingly, cannot stand.

¶26 The plain language of the statutes is subject to only one interpretation. The statutes are unambiguous. "Use" is plainly defined, and the statute incorporating that definition is relevant to our analysis. Because the plain language is subject to only one interpretation, our inquiry is at an end. *Armendariz*, 160 Wn.2d at 110. The majority's in-depth analysis of legislative history is erroneous and unnecessary.

¶27 I would affirm the Court of Appeals and remand for the entry of a judgment refunding the $853,722.55 that Tacoma collected from Gypsum.

¶28 I dissent.

C. JOHNSON, ALEXANDER, and J.M. JOHNSON, JJ., concur with SANDERS, J.

---

[7] The majority's public policy argument on this point is misguided. It asserts, "If we were to apply the disputed portion of the definitional statute to Gypsum's activities, then *every* purchaser of natural gas could simply avoid a local tax by purchasing gas [outside Tacoma]." Majority at 313 (emphasis added). Typical purchasers, however, have neither the means nor the incentive to "avoid" the local tax. As Gypsum correctly notes, "[I]t is easier for most taxpayers to take delivery where the gas is actually burned. Gypsum expends significant effort and incurs substantial risks to take delivery outside Tacoma." Answer at 2 (citation omitted). I note, as well, that the record suggests Gypsum did not take delivery outside Tacoma to "avoid" the city's use tax; it did so for supply reasons. *Id.* (citing Verbatim Report of Proceedings (Oct. 16, 2006) at 20-23).