**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 3, 2022

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 3, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Bar Application of | ) | No. 201,997-8 |
| ZACHARY LEROY STEVENS. | ) | En banc |
| | ) | Filed: <u>November 3, 2022</u> |

YU, J. — In 2018, this court held that "for purposes of bar admission, a moral character inquiry is determined on an individualized basis," and that "there is no categorical exclusion of an applicant who has a criminal or substance abuse history." *In re Bar Application of Simmons*, 190 Wn.2d 374, 378, 414 P.3d 1111 (2018). A little over one year later, Zachary LeRoy Stevens sought admission to the Washington State Bar Association (WSBA).[1] The WSBA Character and Fitness Board (Board) recommended denying his application by a vote of six to five. We reject the recommendation and grant Stevens' application.

---

[1] Stevens has partially waived his right to confidentiality in these proceedings. This opinion therefore contains personally identifying information and is not redacted. His application file otherwise remains sealed. *See* APR 24.1(g).

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

Stevens has been convicted of multiple serious crimes, he violated his probation in 2013, he is subject to sex offender registration requirements, and he was denied admission to the Arizona State Bar Association based on character and fitness concerns. These facts are all relevant to our inquiry. However, like all of us, Stevens is more than the sum of the worst moments of his life. In order to provide the individualized inquiry that our precedent requires, we must consider Stevens' wrongful conduct in context.

Stevens' most serious offenses occurred when he was a teenager. As an adult, he has abstained from engaging in any unlawful conduct since 2013. In that time, he has graduated from college and law school, he has been steadily employed, and he has developed a supportive network of friends and family. It is apparent from the record that Stevens has taken responsibility for his prior misconduct and shows remorse. We therefore hold that despite his past wrongdoing, Stevens has met his burden of showing that he is currently a person "of good moral character" who "possesses the requisite fitness to practice law." APR 24.1(c). As a result, we grant his application for admission to the WSBA.

## BACKGROUND

In bar admissions cases, we must consider the applicant's background to provide context for the events of their lives. *See Simmons*, 190 Wn.2d at 379.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stevens' case is no exception, and his upbringing provides information that is crucial to assessing his culpability, remorse, and rehabilitation.

Stevens was born in Salt Lake City, Utah, and lived most of his life in the Salt Lake City area. Verbatim Report of Remote Proceedings (VRP) at 155. Around age 12, Stevens moved with his family to the suburban town of Alpine, Utah, where he spent his adolescence. Stevens described the culture in Alpine as "very much inundated in the Mormon faith," and he had a great deal of difficulty living within that majority culture. *Id.*

As a young child, Stevens was "very loud and disruptive" at school, and at the age of six, he was diagnosed with attention deficit hyperactivity disorder (ADHD). *Id.* at 157-58. The medications prescribed to treat his ADHD were not successful, and Stevens had to switch medications frequently. *Id.*; *see also id.* at 71 (Stevens was considered to be "treatment resistant.").

As he grew older, Stevens began to feel that he "didn't quite fit into" the local culture around him. *Id.* at 155. Within his community, "anything regarding same-sex attraction" was "a transgression," and individuals who did not conform to community standards were "ostracized" and "bullied." *Id.* at 163-64. Stevens questioned whether he could conform to these community standards, causing him to feel alienated and unable to confide in his parents out of fear that they would be disappointed in him. *Id.* at 165.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Despite these feelings, Stevens found "a strong group of friends" in junior high school and describes himself as "pretty happy" during that time of his life. *Id.* at 158-59. This changed significantly as Stevens made the transition to high school. The medication he had been taking to address his "underlying depression" had "stopped working," and his friends from junior high "all moved on and started doing extracurricular activities." *Id.* at 159. Stevens felt that he was "incapable of integrating" into the high school environment and became "a very poor student." *Id.* at 160-61. By his junior year of high school, Stevens was using cannabis with "one friend in particular" in an effort to self-medicate his depression. *Id.* at 161. He dropped out of school that same year.

Stevens' isolation grew after he completed high school through self-study. *Id.* at 161-62. At that age, most of the boys in Stevens' community were preparing for religious missionary work. However, due to his alienation from the church, Stevens did not prepare for a mission. His depression worsened, and he attempted suicide. *Id.* at 170. Stevens also left his parents' home and moved in with his "one friend" from high school. *Id.* at 168; *see also id.* at 171.

Thus, before he had any criminal history, Stevens faced troubles in school so severe that he dropped out; mental illness so serious that he attempted suicide; and alienation from his church, community, and family based on questions about his sexual orientation. As a result, Stevens' "development at that time was not at the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

level of where one might have expected for someone [at] the age of 19." *Id.* at 76. None of these facts excuse Stevens' later criminal activity, but they provide important context for the path he took.

In 2006, Stevens was still living with his friend, who sold drugs out of their shared apartment. *Id.* at 173. When police executed a search warrant on the apartment, Stevens' friend "made it very, very clear from the beginning that the drugs were all his, and he was the only one that was selling . . . drugs out of the apartment," but Stevens was also arrested for controlled substance violations. *Id.* at 176. Following his arrest, Stevens severed communications with his only friend, moved back into his parents' home, and stopped trying to self-medicate his depression with cannabis. *Id.* at 182-83. Stevens entered a plea in abeyance to the controlled substance charges and, following a two-year period, received notice from the Utah authorities that he had "successfully completed [his] abeyance period." *Id.* at 178. The charges were expunged. Nevertheless, at the age of 19, Stevens was more isolated than he had ever been, as he had now "cut ties with everyone." *Id.* at 182.

As an incomplete and admittedly immature response to challenges he faced, Stevens sought an escape by spending most of his time on his computer. *Id.* at 184. At first, Stevens played video games and established relationships with some other players. He continued to communicate with them "outside of the game." *Id.*

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

These other players were also adolescent males, and they ultimately began "webcamming" and "performing mutual masturbation for the camera for each other." *Id.* at 185. It is undisputed that Stevens never had physical sexual contact with anyone he met or interacted with online. *Id.* at 189. However, Stevens found greater connections online than he had been able to find in person, and he expanded his online interactions.

In these interactions, Stevens "ma[d]e a conscious effort to appear younger," around "age 16," and sought males aged "14-18." *Id.* at 187-88; Mem. from WSBA Regul. Servs. Couns. to Bd. (Aug. 13, 2020) (WSBA Memo), Attach. C at 178. This was dishonest and criminal. Yet it was also a desperate attempt to find intimacy by an isolated, developmentally delayed teenager who needed, but had never received, effective mental health care. In addition, it was a misguided attempt at self-protection after Stevens encountered "older people soliciting him" for sexual interactions far beyond Stevens' developmental level. Wash. Sup. Ct. oral argument, *In re Bar Application of Stevens*, No. 201,997-8 (Oct. 28, 2021), at 28 min., 28 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org; *see also* VRP at 187. The complexity of these circumstances makes our task more challenging, but we cannot ignore it.

One of the individuals Stevens met online was an undercover detective posing as a 14-year-old. The detective requested pornographic pictures of minors,

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and Stevens sent them. A warrant to seize Stevens' computer and webcam was executed on July 20, 2006, but he was not charged until 2010. VRP at 192. Much of the delay was attributable to the Utah authorities' referral of the matter for potential federal charges. The United States Attorney ultimately declined to file charges because "even though the pictures were of children, she felt that they were age appropriate due to the suspect[']s age of only 19 at the time." WSBA Memo, Attach. C at 439.

During the roughly three-year period before Utah authorities filed charges against Stevens, he made considerable strides in turning his life around, despite continuing setbacks. He tried to reconnect with the church and attempted a religious mission, as many of his peers had done immediately after high school. VRP at 190. However, Stevens was "sent home" early because he "had not disclosed to [his] Ecclesiastical leaders the experimentation that occurred" between him and other males when he was younger. *Id.*

Following that experience, Stevens began seeing psychiatrist Richard Ferre to address Stevens' depression and "psychosexual development." *Id.* at 72. Stevens testified that his treatment with Dr. Ferre was the first time he felt listened to and understood, and that Dr. Ferre was the first health care provider who effectively addressed Stevens' depression. *Id.* at 191. During this time period, Stevens also enrolled in community college and later transferred to the University

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

of Utah, while working in restaurants to support himself. Dr. Ferre was aware of Stevens' criminal history, but he was not concerned by Stevens' work and educational activities in the community because "substantial gains [had] been made in [Stevens'] ability to have insight into his behavior" and he was making good progress. *Id.* at 74.

In March 2010, Stevens was charged with four counts of sexual exploitation of a minor. Stevens ultimately pleaded guilty to reduced charges of voyeurism in April 2012. The sentencing court found that Stevens had "completed [his] psychosexual evaluation,'" ordered him to continue treatment and provide updates to the court, and sentenced him to less than one year in jail and home detention, plus three years of probation. *Id.* at 194-95.

The sentencing court stayed certain sex offender provisions that would ordinarily apply, such that "[t]here are no legal restrictions" on where Stevens may "live and work." *Id.* at 284. Nevertheless, Stevens is required to register as a sex offender. He will not be able to petition for relief from the registration requirement until 2024. *Id.* at 211-12. On completion of Stevens' 10-year registration period, his felony voyeurism counts will be reduced to misdemeanors, in accordance with his plea agreement. *Id.* at 212.

The final piece of Stevens' criminal history occurred in 2013, while he was in college and still on probation. *Id.* at 195. He chose to drive after drinking

8

alcohol, and he pleaded guilty to a misdemeanor charge of impaired driving. WSBA Memo, Attach. A at 34. This conviction resulted in new probation requirements that prohibited Stevens from drinking alcohol, but his probation was not otherwise affected. VRP at 196. To the contrary, the Utah Department of Probation recommended terminating his probation early based on the progress Stevens had made. WSBA Memo, Attach. B at 39-41.

In the years since his impaired driving conviction, Stevens graduated from the University of Utah and applied to law school. WSBA Memo at 2. During the law school application process, Stevens appropriately disclosed his criminal history, and he was accepted to the Arizona State University Sandra Day O'Connor College of Law, starting in 2014. WSBA Memo, Attach. C at 818. Stevens continued to comply with his sex offender registration requirements in Arizona. He informed his classmates, his housemates, and his legal externship employers of his criminal history. VRP at 41-42; WSBA Memo, Attach. C at 637-38. He performed well in law school and graduated in 2018. VRP at 154.

As an adult, Stevens has gotten married, and he has developed a network of supportive friends, family, and professional colleagues. *Id.* at 199-200, 288. After graduation, Stevens continued his employment with a law firm that he had worked for while he was in school. *Id.* at 138. His employer knows about his criminal history, but she is not concerned about working with him, and she has consistently

informed her clients of Stevens' sex offender status without incident. *Id.* at 135, 139. When asked about Stevens' criminal history and his bar application, his employer stated, "That 19-year-old should not be a lawyer. The . . . 33-year-old that I work with I think is a different person than that 19-year-old was." *Id.* at 148.

Stevens applied for admission to the State Bar of Arizona. His application was referred to the Arizona Committee on Character and Fitness, which applied a "presumption against admission" based on Stevens' criminal history and denied his application. WSBA Memo, Attach. B. at 50.

Stevens then applied for admission to the WSBA. His wife has family here, and the couple had always planned to move to Washington sometime in the future. VRP at 200-01. When Stevens was denied admission to the Arizona bar, the couple accelerated their plans to relocate. *Id.* at 201. Stevens' bar application was referred to the Board, which recommended denying his application by a vote of six to five. Findings of Fact, Conclusions of Law, Analysis, & Recommendation (Board Majority) at 28. His application is now before us for final determination.[2]

---

[2] We accepted amici curiae briefs from the following individuals and organizations: Students from Seattle University School of Law; American Civil Liberties Union of Washington, Washington Defender Association, Disability Rights Washington, Washington Association of Criminal Defense Lawyers, National Employment Law Project, Institute for Justice, Brad A. Meryhew, and Columbia Legal Services; Northwest Justice Project, TeamChild, QLaw Foundation, QLaw Association, and Lincoln LGBTQ+ Rights Clinic; King County Department of Public Defense; and Public Defender Association, Civil Survival Project, Sarai Cook, Cleodis Floyd, Shon Hopwood, Christopher Poulos, Dieter Tejada, and the National Justice Impact Bar Association.

Without question, the record before us presents a challenging and complex personal history. Therefore, in deciding whether to grant Stevens' application to the WSBA, we must consider not only his past wrongful behavior but the context for his actions and the steps he has taken to improve himself and to hold himself accountable.

ISSUE

Should this court grant Stevens' application for admission to the WSBA?

ANALYSIS

In reviewing Stevens' bar application, we must determine whether he has met his "burden of proving by clear and convincing evidence that [he] is currently of 'good moral character' as that term is defined by APR 20(c), and that [he] is currently fit to practice law and meets all five essential eligibility requirements to do so in accordance with APR 20(d)-(e)." *Simmons*, 190 Wn.2d at 384 (quoting APR 24.1(c)). Our analysis "is guided by 14 different factors enumerated in APR 21(a) as well as aggravating and mitigating factors enumerated in APR 21(b)." *Id.* at 385. "Our review of the Board's recommendation is de novo." *Id.* at 382.

A.   Of the 14 factors listed in APR 21(a), only APR 21(a)(1), (9), (11), and (13) are implicated by Stevens' bar application

The factors listed in APR 21(a) "shall be considered when determining an applicant's good moral character and fitness to practice law." The Board majority

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

correctly determined that many factors (APR 21(a)(2), (4)-(8), and (12)) are not implicated here. It is also undisputed that several APR 21(a) factors are implicated here, including "unlawful conduct" based on Stevens' criminal history, "violation of a court order" based on Stevens' 2013 impaired driving conviction while he was on probation, and "denial of admission to the bar in this or another jurisdiction on character and fitness grounds" based on Stevens' denial in Arizona. APR 21(a)(1), (9), (11). The remaining APR 21(a) factors are disputed. *See* APR 21(a)(3), (10), (13), (14). Stevens also disputes the weight that should be given to the decision of the Arizona State Bar Association denying his application.

We hold that Stevens' bar denial in Arizona is relevant, but we give less weight to this factor than we would give to a bar denial in a jurisdiction with admissions standards more similar to our own or in a case where it appears that the applicant is engaged in forum shopping. We also disagree with the Board's conclusions that APR 21(a)(3), (10), and (14) apply, and we hold that they do not. However, we hold that APR 21(a)(13) does apply in this case, in addition to the undisputed factors noted above.

1.    We give less weight to Stevens' bar denial in Arizona due to
      differences between our states' bar admissions standards

In accordance with APR 21(a)(11), we must give appropriate weight to Arizona's denial of Stevens' bar application. When another jurisdiction decides

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

against admitting a person to their bar association, we must thoughtfully consider their decision, both out of respect for the judgment of other jurisdictions and to prevent applicants from forum shopping for admission. It is undisputed that Stevens was denied admission in Arizona. However, it is also undisputed that Stevens is not forum shopping, given his family connections to our state.[3] Thus, the question is how much weight we should give to this factor.

Stevens argues that "little or no weight" should be given to Arizona's denial of his bar application because the two states have different admissions standards. Reply Br. of Applicant Stevens at 12 (boldface and capitalization omitted). However, Arizona's decision fits squarely within the plain language of APR 21(a)(11), which provides that one of the factors that "shall be considered" is "denial of admission to the bar in this or another jurisdiction on character and fitness grounds." We accordingly reject Stevens' argument that it should be given *no* weight. *Contra* dissent at 1-2 (asserting the majority gives "no weight" to this factor). However, Arizona's denial should be given less weight than a denial by a jurisdiction with admissions standards more similar to our own.

---

[3] The Board did not question Stevens' truthfulness regarding his connections to Washington. *See* Board Majority at 17 (Stevens "is proud of his current marriage to his wife, Hanaye, and stated that he and his wife plan to move to Washington to raise a family."). As a result, the dissent's concerns about "the possibility that an applicant may forum shop after being denied admission in another state" are irrelevant to this case. Dissent at 11. In a case where forum shopping *is* a concern, it should certainly be considered as part of the "individualized" consideration given to every bar applicant. *Simmons*, 190 Wn.2d at 378.

13

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

Arizona applies a "presumption, rebuttable by clear and convincing evidence presented at a proceeding, that an applicant who has been convicted of a misdemeanor involving a serious crime or of any felony *must* be denied admission." ARIZ. R. SUP. CT. 36(b)(2)(A) (emphasis added). This presumption is not the same as, or comparable to, the applicant's burden of proof in Washington's admissions process.

Washington's burden of proof applies equally to everyone, requiring that all applicants "must establish by clear and convincing evidence that [they are] of good moral character and possess[ ] the requisite fitness to practice law." APR 24.1(c). Our standards do not include any presumption of denial or "categorical exclusion" against any applicant with a criminal record. *Simmons*, 190 Wn.2d at 378. Although unlawful conduct is a factor to be considered in accordance with APR 21(a)(1), Washington bar applicants with a criminal history do not have to overcome a higher burden than other applicants do.

By contrast, the Arizona presumption against admitting those convicted of a serious misdemeanor or "any felony" explicitly adds an additional, substantive burden. ARIZ. R. SUP. CT. 36(b)(2)(A). Where Arizona's presumption against admission applies, the applicant is not merely required to show by clear and convincing evidence that they should be admitted based on a number of factors. Instead, the applicant "must first establish rehabilitation from prior criminal

14

conduct, a requirement that adds to [their] burden of showing current good moral character." *In re Hamm*, 211 Ariz. 458, 463, 123 P.3d 652 (2005).

This added burden is a threshold matter in Arizona. Therefore, the applicant "must *initially demonstrate complete rehabilitation* before [Arizona authorities] consider other evidence of present good moral character." *In re King*, 212 Ariz. 559, 563, 136 P.3d 878 (2006) (emphasis added). The Arizona Supreme Court readily acknowledges that in cases "'of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make.'" *Hamm*, 211 Ariz. at 464 (quoting *In re Matthews*, 94 N.J. 59, 81-82, 462 A.2d 165 (1983)).

The additional burden found in Arizona law is, and should remain, entirely absent from Washington law. Although Arizona's presumption against admission is not officially a per se disqualification, it may operate as such for those who cannot be sure whether their criminal history will be considered "extremely damning" and for those who do not know what they must do to demonstrate "full and complete rehabilitation." When such subjective standards are applied to such a substantial burden, there is an unacceptable risk that the ultimate decision will be unduly influenced by unlawful considerations.[4] *See Simmons*, 190 Wn.2d at 398

---

[4] We do not mean to suggest that "Washington's individualized inquiry is any less subjective than the Arizona standard." *Contra* dissent at 9. Instead, we distinguish between applying subjective standards in a state that does have a presumption against admission for applicants with criminal histories (like Arizona) and a state that does not (like Washington).

n.13 (citing Jon Bauer, *The Character of the Questions and the Fitness of the Process: Mental Health, Bar Admissions and the Americans with Disabilities Act,* 49 U.C.L.A. L. REV. 93 (2001); Deborah L. Rhode, *Moral Character as a Professional Credential,* 94 YALE L.J. 491 (1985)); *see also* APR 21(c) (prohibiting discrimination in admissions decisions). We therefore continue to "affirm the principles that for purposes of bar admission, a moral character inquiry is determined on an individualized basis and that there is no categorical exclusion of an applicant who has a criminal or substance abuse history." *Simmons*, 190 Wn.2d at 378.

In addition, the APRs contain no presumption of reciprocity with other jurisdictions when it comes to bar admissions. Like all court rules, the APRs should be interpreted in accordance with the rules of statutory interpretation. *See LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 48, 75, 331 P.3d 1147 (2014) (interpreting the Rules of Professional Conduct). This court has long held that our "fundamental objective is to ascertain and carry out the [drafter]'s intent, and if the [rule]'s meaning is plain on its face, then the court must give effect to that plain meaning." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The plain meaning "is discerned from all that the [drafter] has said in the [rule] and related [rules] which disclose [the drafter's] intent about the provision in question." *Id.* at 11.

16

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

The Rules for Enforcement of Lawyer Conduct (ELCs) contain a presumption of reciprocity, requiring licensed attorneys who are disciplined by other jurisdictions to "show cause" why this court "should not impose the identical discipline." ELC 9.2(c). By contrast, the APRs merely provide that denial of admission by another jurisdiction is one factor to be considered, alongside many others. This shows that the rule drafters (that is, this court) knew how to enact a presumption of reciprocity. The court chose to employ such a presumption in the ELCs and chose not to do so in the APRs. Ordinary rules of statutory interpretation hold that this indicates an intent to differentiate the admissions process from the disciplinary process, and reasonably so. Although there are certain parallels between discipline and admission cases, unlike attorneys facing discipline, new applicants to the bar "do not have previous lawful experience as independently practicing attorneys." *Simmons*, 190 Wn.2d at 388.

Indeed, we have previously declined to import a "substantial evidence" standard of review from the ELCs to the APRs precisely because that standard is not reflected in the APRs. *Id.* at 382. There is no justification for importing a presumption of reciprocal bar denial into the APRs from the ELCs, particularly outside of the rule-making process, which "enables all interested and affected parties to participate in creating the rule. Foisting the rule upon courts and parties

17

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

by judicial fiat could lead to unforeseen consequences." *In re Pers. Restraint of Carlstad*, 150 Wn.2d 583, 592 n.4, 80 P.3d 587 (2003).

Thus, we consider Stevens' denial of admission to the Arizona State bar as a relevant factor. However, we give it less weight than we would give to a denial by a jurisdiction with laws more comparable to our own.

2. The Board majority incorrectly concluded that APR 21(a)(3), (10), and (14) are implicated here

We next consider Stevens' challenge to the Board's conclusions that APR 21(a)(3), (10), (13), and (14) are implicated in this case. We agree with the Board that APR 21(a)(13) is implicated, but we agree with Stevens that APR 21(a)(3), (10), and (14) do not apply.

a. APR 21(a)(13) is implicated by Stevens' criminal history

APR 21(a)(13) requires us to consider "conduct that physically threatens or harms another person." In concluding that this factor applies, the Board majority correctly pointed out that "[c]onduct involving child pornography and sexual exploitation of a minor is harmful" and that "[c]hild pornography is not a victimless crime and is extremely serious." Board Majority at 21. However, that is not the inquiry required by the plain language of the rule.

The seriousness of prior misconduct is not part of the analysis in determining whether APR 21(a)(13) applies; instead, it is an aggravating factor to

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

be considered pursuant to APR 21(b)(4), discussed below. In addition, APR 21(a)(13) explicitly applies to conduct that *physically* threatens or harms others, not all harmful conduct. Based on this language, Stevens contends that APR 21(a)(13) should not apply because it is undisputed that his crimes "did not involve physical contact." Reply Br. of Applicant Stevens at 19.

Stevens is correct that we must interpret APR 21(a)(13) in accordance with its plain meaning to avoid rendering APR 21(a)(13)'s explicit reference to physical harm "'meaningless or superfluous.'" *City of Seattle v. Long*, 198 Wn.2d 136, 151, 493 P.3d 94 (2021) (internal quotation marks omitted) (quoting *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010)). Nevertheless, we reject Stevens' contention on this point. He did not raise it until his reply brief, and the exchange and viewing of sexually explicit depictions of minors is sufficiently connected to physical threats and physical harm that APR 21(a)(13) is implicated by such conduct.

b.      APR 21(a)(3) does not apply in this case

Where applicable, APR 21(a)(3) provides that we must consider an applicant's "making of false statements or omitting material information in connection with an application for limited admission to practice law, to take an examination required for admission, or otherwise for licensure or admission to practice law." The Board majority concluded that this factor was implicated

19

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

because there is a discrepancy in the record regarding Stevens' 2006 convictions for controlled substance violations. We disagree.

As the Board majority correctly noted, Stevens "denies pleading to felony charges," but "[d]ocumentation shows that Stevens entered guilty pleas on all three charges in that matter, including the two felony charges." Board Majority at 20. However, this discrepancy does not show that Stevens intentionally made a false statement or omitted material information. Instead, as the Board dissent correctly pointed out, "Stevens fully disclosed and cooperated in this current application." Board Dissent at 1. Moreover, his recollection of pleading to nonfelony charges "is plausible and supported by Utah's expungement statute in effect when the convictions were expunged in 2008," which did not permit expungement of felony convictions. *Id.* at 2. Therefore, we agree with the Board dissent, and with bar counsel's assessment when referring Stevens to the Board, that APR 21(a)(3) is "[n]ot applicable on [his] current application." WSBA Memo at 10.

c.    APR 21(a)(10) does not apply here

Next, Stevens disputes the applicability of APR 21(a)(10), which provides that we must consider whether Stevens has engaged in "conduct demonstrating an inability to meet one or more essential eligibility requirements for the practice of law." The Board majority concluded that this factor applies in accordance with its analysis of Stevens' inability to meet the essential eligibility requirements. Board

20

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

Majority at 21.  We agree with the Board to the extent that it recognized APR 21(a)(10) is somewhat duplicative of the analysis required to evaluate Stevens' fitness to practice; both APR 21(a)(10) and the definition of "[f]itness to practice law" explicitly incorporate "the essential eligibility requirements for the practice of law."  APR 20(d).  However, as discussed further below, we hold that Stevens does meet the essential eligibility requirements, so APR 21(a)(10) is not implicated.

        d.      APR 21(a)(14) is a catchall category that does not apply here

The final APR 21(a) factor provides that we must consider "any other conduct that reflects adversely on moral character or fitness of the applicant to practice law."  APR 21(a)(14).  The Board majority concluded that this factor is implicated by Stevens' impaired driving conviction while he was on probation.  However, that conviction is already subject to consideration as unlawful conduct and violation of a court order pursuant to APR 21(a)(1) and (9).  By requiring the consideration of "other" conduct, APR 21(a)(14) clearly directs this court to consider conduct that is not already implicated by the preceding APR 21(a) factors.  In concluding that APR 21(a)(14) is implicated by Stevens' impaired driving conviction, the Board majority improperly read the word "other" out of APR 21(a)(14), thereby permitting any misconduct by the applicant to be counted twice (or more), for no clear reason.  We decline to adopt this reasoning and hold that APR 21(a)(14) does not apply.

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

To summarize, only APR 21(a)(1), (9), (11), and (13) are implicated by the facts of this case. In addition, we hold that APR 21(a)(11) is entitled to limited weight based on the different standards for admission in Washington and Arizona. The weight given to APR 21(a)(1), (9), and (13) must be determined in light of the aggravating and mitigating factors in APR 21(b).

B.      Most of the applicable APR 21(b) factors are mitigating, and only one is aggravating

Having identified the APR 21(a) factors that apply in this case, we must consider the factors listed in APR 21(b) "in mitigation or aggravation." We hold that only the "seriousness of the conduct" is an aggravating factor here. APR 21(b)(4). All of the other APR 21(b) factors are either mitigating, neutral, or not applicable. Therefore, applying the APR 21(b) factors to the APR 21(a) factors discussed above, we hold that Stevens' prior misconduct, though extremely serious, is sufficiently mitigated that it does not prevent his admission to the bar.

1.      Five of the nine APR 21(b) factors are mitigating

Stevens' age at the time of his prior actions, the time that has passed, the circumstances underlying his conduct, Stevens' candor in the admissions process, and the evidence of his rehabilitation and recovery are all mitigating factors here.

22

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

      a.     Stevens' age is a mitigating factor overall

APR 21(b)(1) requires us to consider the "applicant's age at the time of the conduct." The Board majority appears to have concluded this factor is aggravating because "Stevens was an adult when the unlawful conduct occurred and was capable of understanding that his behavior was harmful and wrong." Board Majority at 22.

However, as Stevens correctly notes, the "hallmark features" of youth, including "'immaturity, impetuosity, and failure to appreciate risks and consequences'" do not disappear on a person's 18th birthday. Br. of Applicant Stevens at 31-32 (quoting *State v. Houston-Sconiers*, 188 Wn.2d 1, 23, 391 P.3d 409 (2017)). To the contrary, this court's precedent has repeatedly credited "psychological and neurological studies showing that the 'parts of the brain involved in behavior control' continue to develop well into a person's 20s." *State v. O'Dell*, 183 Wn.2d 680, 691-92, 358 P.3d 359 (2015) (footnote and internal quotation marks omitted) (quoting *Miller v. Alabama*, 567 U.S. 460, 472, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)); *see also In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 313, 321-23, 482 P.3d 276 (2021) (plurality opinion).[5]

---

[5] *O'Dell* cites multiple studies reaching this conclusion, including Terry A. Maroney, *The False Promise of Adolescent Brain Science in Juvenile Justice*, 85 Notre Dame L. Rev. 89, 152 & n.252 (2009); *MIT Young Adult Development Project: Brain Changes*, Mass. Inst. of Tech., http://hrweb.mit.edu/worklife/youngadult/brain.html (last visited Aug. 4, 2015); and Jay N. Giedd, *Structural Magnetic Resonance Imaging of the Adolescent Brain*, 1021 Ann. N.Y. Acad.

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

The dissent contends that this precedent should play no role in our admissions decisions because "our review in this case is not to determine whether Stevens received an appropriate sentencing in a criminal case." Dissent at 12. The dissent is correct that the law we apply in criminal sentencing cases does not apply in the admissions context. However, we do not cite these cases for principles of law. Instead, we cite them as sources of "current, credible social science." *Simmons*, 190 Wn.2d at 389. Such evidence must play a role in our admissions decisions where relevant because "[w]e follow evidence-based practices" in evaluating bar applicants. *Id.*; *cf.* APR 21(b)(9)(ix) (requiring consideration of "expert opinion that the period of treatment, recovery, or remission is adequate" if it has been "less than two years"). Therefore, although the law set forth in cases like *O'Dell* and *Monschke* does not apply directly here, the social science underlying those decisions cannot be ignored.

Stevens' conviction for impaired driving while he was on probation occurred when he was 26 years old. He was an adult, and research indicates that his brain was likely "'fully mature'" by that age. *O'Dell*, 183 Wn.2d at 692 n.5 (quoting

SCI. 77 (2004). 183 Wn.2d at 692 n.5. *Monschke* cites many others, including Kathryn Monahan et al., *Juvenile Justice Policy and Practice: A Developmental Perspective*, 44 CRIME & JUST. 577, 582 (2015); Alexandra O. Cohen et al., *When Does a Juvenile Become an Adult? Implications for Law and Policy*, 88 TEMPLE L. REV. 769 (2016); and Elizabeth S. Scott et al., *Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 FORDHAM L. REV. 641 (2016). 197 Wn.2d at 322.

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*MIT Young Adult Development Project: Brain Changes*, MASS. INST. OF TECH., http://hrweb.mit.edu/worklife/youngadult/brain.html (last visited Aug. 4, 2015)). We therefore hold that Stevens' age is neither a mitigating nor an aggravating factor as to his impaired driving conviction.

However, Stevens' most serious crimes occurred when he was 19 years old, at an age when his brain was still in development. Moreover, Dr. Ferre testified that even for a 19-year-old, Stevens "was functioning at an immature level" and his development was delayed. VRP at 76. His voyeurism convictions and his expunged controlled substances violations reflect, in part, his youthful characteristics. As a result, we hold that Stevens' age is a significant mitigating factor with regard to these convictions.

b.     The time that has passed is a mitigating factor in this case

APR 21(b)(2) directs us to consider whether the "recency of the conduct" is aggravating or mitigating. As the Board majority correctly recognized, Stevens' misconduct was not recent: "The last incident of the most serious unlawful conduct occurred approximately 14 years ago" and his "probation violation occurred approximately seven years ago." Board Majority at 22. Nevertheless, the Board appeared to conclude this factor is aggravating, based not on the recency of Stevens' conduct, but on his continuing obligation to register as a sex offender. *Id.* The dissent appears to do the same, contending that "this ongoing legal obligation

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

[is] a factor weighing against Stevens' admission," despite its acknowledgement that "Stevens' conduct was *not* recent." Dissent at 15 (emphasis added). We disagree.

Nothing in the language of APR 21(b)(2) suggests that the dissent's analysis is appropriate. Stevens' *compliance* with his legal obligations is relevant to APR 21(b)(9), as discussed further below. However, the *existence* of ongoing legal obligations is not, in itself, a factor weighing against admission. If it were, our precedent holding that "prior misconduct by a new applicant rarely provides 'conclusive evidence' that the applicant lacks good moral character" would be inapplicable to any applicant with ongoing legal obligations. *Simmons*, 190 Wn.2d at 388. We decline to limit our precedent in this way.

Indeed, the dissent cites no provision of the APRs and no applicable case law to support its view that Stevens' ongoing registration requirements are "a strong aggravating factor." Dissent at 17. Instead, the dissent cites a single case concerning the ongoing legal obligations of a disbarred attorney seeking reinstatement. *Id.* at 17 n.11 (citing *In re Disciplinary Proceedings Against Walgren*, 104 Wn.2d 557, 571, 708 P.2d 380 (1985)). As we have already held, "a new applicant with prior criminal or substance abuse issues is very different from a reinstatement applicant who has previously been disbarred." *Simmons*, 190 Wn.2d at 387. Unlike previously disbarred attorneys, new applicants like Stevens "do not

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

have previous lawful experience as independently practicing attorneys" and have not "previously failed to fulfill their professional responsibilities so egregiously that this court could not allow them to continue practicing law." *Id.* at 388.

Thus, the dissent's approach is not supported by the APRs or applicable precedent, and we decline to adopt it. We therefore hold that the recency of Stevens' misconduct is a mitigating factor in this case.

c. The circumstances of Stevens' conduct are largely mitigating

APR 21(b)(5) asks whether the "factors or circumstances underlying the conduct" are mitigating or aggravating. The Board correctly recognized that Stevens' "relative youth and poor decision-making" and his difficulty finding effective mental health treatment all provide mitigating context for his controlled substances convictions. Board Majority at 22. We agree. We further hold that the underlying facts and circumstances of Stevens' voyeurism convictions are strongly mitigating factors in this case. As discussed above, the conduct underlying these charges took place when Stevens was extremely isolated, dealing with an untreated mental illness, and developing at a delayed rate compared to his peers. None of these circumstances excuse Stevens' actions, but they provide context for understanding what he did, why he did it, and why he will not engage in similar conduct in the future. The circumstances underlying Stevens' impaired driving

27

conviction are not mitigating, but they are not aggravating either. Therefore, this factor is overall mitigating.

   d.  Stevens' candor is a mitigating factor

All bar applicants are expected "to cooperate in good faith" during the admissions review process. APR 22.2(a). APR 21(b)(7) specifically directs us to consider whether the applicant's "candor in the admissions process and before the Character and Fitness Board" is an aggravating or mitigating factor. As the Board correctly and unanimously agreed, Stevens was candid throughout this process.

   e.  Stevens' rehabilitation and recovery is strongly mitigating

APR 21(b)(9) requires us to evaluate "evidence of rehabilitation, recovery, or remission" based on a nonexclusive list of 10 subfactors, "no single one of which is determinative." We must carefully consider each subfactor.

In accordance with APR 21(b)(9)(i) we must address the "absence of recent misconduct." As the Board correctly recognized, this subfactor weighs in favor of mitigation because Stevens has not engaged in any misconduct since 2013, and his most serious misconduct was years before that.

We must next address Stevens' "compliance with any disciplinary, judicial, or administrative order arising out of the misconduct." APR 21(b)(9)(ii). Stevens' only act of noncompliance was his impaired driving while on probation. Otherwise, as the Board unanimously recognized, Stevens has fully "complied

with court orders," including his sex offender registration requirements. Board Majority at 23; *cf.* Board Dissent at 3. This subfactor overall weighs in favor of mitigation.

APR 21(b)(9)(iii) directs us to assess the "sufficiency of punishment" Stevens received for his offenses. The Board majority appeared to view this as an aggravating factor because Stevens received a "light sentence" for his voyeurism convictions. Board Majority at 23. We disagree. As the Board dissent correctly pointed out, neither the Board nor this court has any "basis in the record upon which to second guess the decision made by a Utah judge who was much more familiar with the underlying facts, criminal charges and applicable law than we are." Board Dissent at 3-4. We therefore hold that the adequacy of Stevens' punishment weighs in favor of mitigation.

The Board correctly concluded that APR 21(b)(9)(iv), which asks about "restitution of funds or property," is not applicable in this case. *See* Board Majority at 23.

APR 21(b)(9)(v) directs us to consider the "applicant's attitude toward the misconduct, including without limitation acceptance of responsibility and remorse." The Board majority appears to have treated this as an aggravating factor, acknowledging that "Stevens appears to accept responsibility and express some remorse for his unlawful conduct" but contradictorily asserting that "Stevens

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

shows little insight into his behavior and accepts little responsibility." Board

Majority at 23. We disagree. Stevens' attitude toward his past misconduct is one

of genuine remorse and acceptance of responsibility.

As shown in the record, Stevens understands the impact that his choices had

on his victims. VRP at 262-63. Indeed, Dr. Ferre explicitly testified that Stevens

"was never avoidant of taking that responsibility" for his crimes, and we credit his

testimony. *Id.* at 77. By contrast, the statements the Board majority pointed to as

evidence of insufficient remorse are, in fact, evidence that Stevens is aware of the

circumstances that contributed to his past misconduct. It is wrong to equate this

awareness with a lack of remorse or a failure to accept responsibility.

Next, APR 21(b)(9)(vi) requires us to evaluate the applicant's "personal

assurances, supported by corroborating evidence, of a desire and intent to engage

in exemplary conduct in the future." Stevens has unequivocally given such

personal assurances, which are supported by evidence of his complete lack of

misconduct since 2013, his continuing engagement in mental health treatment, his

development of a supportive network of family and friends, and the unhesitating

support of his employers. APR 21(b)(9)(vii) similarly asks us to consider Stevens'

"constructive activities and accomplishments since the conduct in question." Since

his most recent misconduct in 2013, Stevens has graduated from college and law

school while maintaining steady employment. He has taken control of his mental

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

health issues, and he has learned to seek support when he needs it, rather than isolating himself. This evidence weighs in favor of mitigation.

The Board majority reached the opposite conclusion. According to the Board, because Stevens' "offenses are private and serious," it is not appropriate to "rely solely upon character testimony, potentially ineffective treatment and self-reporting." Board Majority at 25. However, as the dissent correctly pointed out, "[t]his standard would forever bar Stevens from being licensed as an attorney" based solely on the nature of his convictions. Board Dissent at 5. The Board majority's approach is thus inconsistent with our precedent holding "that there is no categorical exclusion of an applicant who has a criminal or substance abuse history." *Simmons*, 190 Wn.2d at 378. APR 21(b)(9)(vi) and (vii) weigh in favor of mitigation.

Pursuant to APR 21(b)(9)(viii), we must consider "the applicant's understanding and acceptance of the factors leading to the misconduct and how similar misconduct may be avoided in the future." The Board majority, echoing its analysis of APR 21(b)(9)(v) discussed above, concluded this was an aggravating factor because Stevens did not present "a qualified, evidenced based assessment" of his current mental health and he "demonstrates a lack of empathy for victims of child pornography." Board Majority at 25. We disagree.

31

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

To the extent the Board majority relied on the same statements it cited in connection with APR 21(b)(9)(v), we reject such reliance for the reasons stated above. To the extent the Board majority relied on its view that "Dr. Ferre is not qualified to identify or treat psycho-sexual issues," we disagree. *Id.* at 26. As the Board dissent correctly pointed out, the evidence in the record shows that "Dr. Ferre is unquestionably qualified to identify and treat psychosexual issues in young people and is also competent to render an expert opinion in this proceeding." Board Dissent at 13. In addition, "the Utah court noted that Stevens had completed a psychosexual evaluation and was satisfied with the ongoing treatment and quarterly reports of Dr. Ferre." *Id.* at 12. Dr. Ferre is qualified, and we credit his testimony.

Finally, to the extent that the Board majority's assessment of APR 21(b)(9)(viii) relies on the fact that Stevens did not present a current mental health evaluation, we strongly disapprove this reasoning. Although Stevens has a criminal history relating to his mental health, that is not a sufficient basis to require a current mental health evaluation before he may be admitted to the bar. Stevens has successfully completed all court-ordered treatment. Moreover, Stevens demonstrated an understanding of the factors leading to his misconduct in specific relation to his mental health needs because he proactively sought treatment with Dr. Ferre. He continues to manage his mental health with prescribed medication in

32

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

consultation with his doctor, and he has maintained contact with Dr. Ferre, who did not express any concerns about Stevens being out in the community. VRP 90-91, 84-85.

We have no authority to require Stevens to undergo a mental health evaluation, and it may, in fact, be unlawful for us to do so. Stevens is protected from discrimination in the admissions process on the basis of "sensory, mental or physical disability." APR 21(c)(7). Requiring a person to undergo a health evaluation solely because they have acknowledged their disability status appears discriminatory. *See* 42 U.S.C. § 12112(d)(2)(A) (prohibiting medical examination or inquiry of a job applicant as to whether they have a disability or "as to the nature or severity of such disability"); RCW 49.60.180(4) (prohibiting "any inquiry in connection with prospective employment, which expresses any limitation, specification, or discrimination as to" disability status, "unless based upon a bona fide occupational qualification").

Moreover, by falsely equating Stevens' mental health history with his current moral character and fitness to practice law, the Board majority strongly discourages current and future attorneys, and judges from disclosing and seeking treatment for mental health issues, putting them at increased risk for harmful behaviors that are known to plague the legal profession, ranging from alcohol and drug abuse to suicide. *See* Hannah Furfaro, *How Stigma Prevents People from*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Accessing Mental Health Care and What Can Be Done about It*, SEATTLE TIMES (Oct. 22, 2021), https://www.seattletimes.com/seattle-news/mental-health/how-stigma-prevents-people-from-accessing-mental-health-care-and-what-can-be-done-about-it/. Thus, the Board majority's attempt to protect the profession would have precisely the opposite result. We hold that APR 21(b)(9)(viii) weighs in favor of mitigation in this case.

APR 21(b)(9)(ix) directs us to consider the "length of time in which the applicant has been in recovery, or remission, where applicable." The Board majority appears to have treated this as an aggravating factor, noting that "Stevens' depression is intractable" and asserting that "he was not treated for psycho-sexual issues and has quit therapy." Board Majority at 26. We reject this reasoning and hold this factor is mitigating.

As discussed above, we disagree with the Board majority's refusal to credit Dr. Ferre's testimony. In addition, just as it was inappropriate for the Board majority to second-guess the sentencing decisions of the Utah court, it is entirely inappropriate for the Board to second-guess Stevens' treatment providers and require him to engage in talk-based therapy. There is no indication that Stevens' condition is not well managed by the prescribed medication he takes. The Board majority's attempt to impose a specific treatment regimen on him is unfounded and discriminatory, as discussed above. As the Board dissent correctly pointed out,

"[g]iven the reliable, scientific evidence introduced at the hearing and the absence of any conflicting testimony or documentation, any conclusion that Stevens is likely to reoffend is based on nothing but unsupported conjecture." Board Dissent at 16.

The final subfactor in considering evidence of rehabilitation, recovery, and remission is APR 21(b)(9)(x), which concerns Stevens' "compliance with any recommended or prescribed treatment plans." It is undisputed that Stevens sought mental health treatment before any court ordered him to do so, that he completed all of his court-ordered mental health treatment, and that he continues to treat his mental health diagnosis. This subfactor weighs in favor of mitigation. The Board majority's conclusion to the contrary is based on its refusal to credit Dr. Ferre's testimony, which we reject. As a result, the subfactors of APR 21(b)(9) all indicate that the evidence of Stevens' "rehabilitation, recovery, or remission" is a mitigating factor.

Thus, five of the nine APR 21(b) factors are mitigating. *See* APR 21(b)(1), (2), (5), (7), (9). None of these factors should be considered in aggravation.

2. One APR 21(b) consideration is an aggravating factor in this case

APR 21(b)(4) requires us to consider the "seriousness of the conduct." It is rightfully undisputed that the conduct underlying Stevens' voyeurism convictions is extremely serious. Stevens' conduct of driving while he was impaired and on

35

probation is also serious.  The seriousness of Stevens' expunged controlled substances conviction is less clear, but on the whole, this factor is aggravating.

3.      The remaining APR 21(b) factors are neutral or not applicable

The remaining factors are APR 21(b)(3), (6), and (8).  Each of these factors is neutral or not applicable here.

APR 21(b)(3) requires us to contemplate the "reliability of the information concerning the conduct."  There is no dispute that the information about Stevens' prior misconduct is reliable, so this factor is not aggravating.  However, it is also not mitigating because the reliability of the information here is not within Stevens' control.  This factor is neutral.

APR 21(b)(6) provides that we must consider the "cumulative nature of the conduct."  The Board majority concluded this is an aggravating factor because "Stevens repeatedly violated the law or placed himself in situations in which the law was violated."  Board Majority at 22.  We disagree.  To be "cumulative," an applicant's acts of prior misconduct must be somehow similar or connected to each other.  Stevens' convictions were not similar or connected.  This is not mitigating, but it is certainly not aggravating.  Therefore, this factor is neutral.

Finally, APR 21(b)(8) directs us to consider the "materiality of any omissions or misrepresentations" by the applicant.  Because Stevens did not omit or misrepresent information in his application, this factor is not applicable.

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

To summarize, we conclude that the relevant APR 21(a) factors are Stevens' unlawful conduct, his violation of a court order, his denial of admission to the Arizona bar, and his prior misconduct that physically threatened or harmed others. APR 21(a)(1), (9), (11), (13). We hold that Stevens' Arizona bar denial should be given limited weight based on the differences between Washington and Arizona bar admissions standards. We also hold that although the seriousness of Stevens' misconduct is an aggravating factor, the other APR 21(b) factors are all either mitigating or not applicable.

Therefore, we conclude that Stevens' serious misconduct is sufficiently mitigated that it should not prevent his admission to the bar. As a result, we hold that Stevens has satisfied his burden to "establish by clear and convincing evidence that he . . . is of good moral character" based on his "record of conduct manifesting the qualities of honesty, fairness, candor, trustworthiness, observance of fiduciary responsibilities, adherence to the law, and a respect for the rights of other persons and the judicial process." APR 24.1(c), 20(c).

C.  Stevens has established his fitness to practice law because he meets all of the essential eligibility requirements

As noted above in our discussion of APR 21(a)(10), we hold that Stevens' "record of conduct . . . establishes that [he] meets the essential eligibility requirements for the practice of law" listed in APR 20(e). APR 20(d). His history

37

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

certainly raises questions as to whether he was able to meet some of the essential eligibility requirements in the past. Nevertheless, our task is to evaluate whether Stevens "is *currently* of good moral character and possesses the requisite fitness to practice law." *Simmons*, 190 Wn.2d at 381 (emphasis added). We hold that he has demonstrated his current ability to meet the essential eligibility requirements, and has therefore shown he "possesses the requisite fitness to practice law." APR 24.1(c). The Board majority summarily concluded to the contrary based on the same unfounded concerns and unlawful discrimination discussed above.

The Board majority acknowledged that Stevens has proved his "ability to diligently, reliably, and timely perform legal tasks and fulfill professional obligations to clients, lawyers, LLLTs, LPOs, courts, and others," and his "ability to communicate comprehensibly with clients, lawyers, LLLTs, LPOs, courts, and others, with or without the use of aids or devices." APR 20(e)(3), (5). However, the Board majority incorrectly determined that Stevens does not meet the remaining three essential eligibility requirements.

First, the Board majority concluded that "Stevens has demonstrated an inability to conduct himself with a high degree of honesty and integrity by behavior resulting in multiple criminal charges for which he received inadequate punishment, evaluation and treatment." Board Majority at 27; *see* APR 20(e)(1). As discussed above, we have no basis on which to question the adequacy of

Stevens' punishment. In addition, questioning the adequacy of Stevens' treatment with no supporting evidence will have a serious and lasting impact on the progress we have made on the destigmatization and treatment of mental health issues, as discussed above. Finally, contrary to our precedent, the Board majority's minimal analysis of this factor would prevent Stevens from ever gaining admission to the WSBA because he cannot change his criminal history. We hold that the first essential eligibility requirement is met.

Second, the Board majority held that Stevens lacks "[t]he ability to conduct himself in a manner that engenders respect for the law and adheres to the Washington Rules of Professional Conduct, because he engaged in conduct that demonstrates disrespect for the law and resulted in multiple criminal charges." Board Majority at 27; *see* APR 20(e)(2). However, the Board majority fails to acknowledge Stevens' unblemished record of complying with his legal duties, including his ongoing sex offender registration requirements, despite the considerable burdens of doing so. There is no indication in the record that Stevens currently conducts himself in a manner that does not respect the law, and the Board majority's conclusion to the contrary relies on facts from his past that cannot be changed. Stevens meets the second essential eligibility requirement.

Third, the Board majority recognized that "Stevens is capable of performing legal tasks and of identifying ethical dilemmas," but nevertheless it concluded that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"without professional assessment of Stevens' likelihood to reoffend, his ability to identify ethical issues may not be sufficient to protect the public." Board Majority at 27. As discussed above, to the extent the Board majority relies on the fact that Stevens did not present a current mental health evaluation, its reasoning is inappropriate and potentially discriminatory. Moreover, Stevens has taken a careful, nuanced approach to determining when he will notify prospective clients of his sex offender status, despite having no legal obligation to do so, demonstrating that he is already engaging in the kind of thoughtful self-reflection that is necessary to resolve ethical dilemmas. He meets the fourth essential eligibility requirement.

Therefore, we hold that Stevens meets all the essential eligibility requirements, and he has "establish[ed] by clear and convincing evidence that he . . . possesses the requisite fitness to practice law." APR 24.1(c). He has met his burden of proof, and his application should be granted.

## CONCLUSION

*Simmons* "affirm[s] this court's long history of recognizing that one's past does not dictate one's future." 190 Wn.2d at 387, 401. We do so again today. In the years that Stevens has abstained from unlawful conduct, he has turned his life around, and all the evidence in the record indicates he is unlikely to reoffend. We grant his application for admission to the Washington State Bar Association.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____

_____
Johnson, J.

_____
Gordon McCloud, J.

_____

_____
Montoya-Lewis, J.

_____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Bar Application of Zachary LeRoy Stevens,* No. 201,997-8

61

*In re Matter of the Bar Application of Zachary Leroy Stevens*

No. 201,997-8

MADSEN, J. (dissenting)—For bar admission, applicants bear the burden of proving by clear and convincing evidence that they currently possess the good moral character and fitness to practice law. Determining whether an applicant has met this burden requires an individualized inquiry based on the applicant's prior conduct. If an applicant's conduct raises red flags, the burden on the applicant to establish moral character and fitness necessarily becomes more onerous.

Our role in bar admissions cases is to establish a baseline standard for attorneys practicing in the State of Washington. This role is crucial to ensuring that people are able to trust their lawyers and the legal profession as a whole. We do not presume fitness to practice—a bar applicant must demonstrate this.

In my view, Zachary Stevens has not met his burden. First, Stevens was already denied admittance to the Arizona bar. Although Washington standards are not identical to those in Arizona, both states require the applicant to bear the burden of showing fitness to practice. In Arizona, as in Washington, a felony conviction is evidence of a lack of fitness that the applicant must overcome, particularly where the applicant is still under constraints imposed by their conviction. In giving no weight to the Arizona Supreme

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Court's decision against admission, I believe the majority creates a substantially lower standard compared to other states, which will encourage forum shopping by those with serious criminal records. Second, in considering Stevens' criminal history, the Washington State Bar Association's (WSBA) Character and Fitness Board (Board) took into consideration Stevens' age at the time of his convictions for voyeurism and driving under the influence. The majority goes farther—it imports *constitutional* considerations of youth for criminal sentencing purposes and then puzzlingly considers Stevens' age to be a *mitigating* factor, despite the fact that he was an adult at the time of conduct. This holding confuses the purpose of admission criteria—to protect the public—and instead draws on juvenile sentencing cases where the goal is to reintegrate offenders. It is also at odds with the overall admissions scheme. The commission of a crime is a strike against admission that must be overcome, not a mitigating factor. Third, Stevens still has an ongoing legal obligation to register as a sex offender because of his past conduct. This court has routinely required completion of legal obligations as evidence of fitness. Finally, Stevens' own therapist expressed some concern about his ability to handle stress. Stevens has not presented any recent evidence showing his current mental fitness to practice, despite the doctor's concerns.

Alone, none of these factors is dispositive. Viewed in totality, however, these factors demonstrate that Stevens failed to meet his burden to show by clear and convincing evidence that he is currently of good moral character and fit to practice law.

No. 201,997-8
Madsen, J., dissenting

The majority says that it recognizes the serious nature of Stevens' convictions but contextualizes that behavior in a way that sanitizes and minimizes the ongoing consequences of that behavior. Specifically, at the time of his most serious offenses he was 19 years old and was involved in the sexual exploitation of children. Additionally, he was required to register as a sex offender. The majority overlooks that Stevens' most serious violations occurred when he was an adult, at the ages of 19 and 26. Moreover, the offenses involved victimized youth who were significantly younger than Stevens. I disagree, and I would therefore deny Stevens' application for admission at this time.

BACKGROUND

Stevens grew up in Alpine, Utah. After graduating high school, Stevens moved out of his parents' house to live with a friend. According to Stevens, he also began drinking alcohol and smoking cannabis as a way to deal with his depression. In March 2006, Stevens was arrested and charged with possession of a controlled substance with intent to distribute; purchase, transfer, possession, or use of a firearm by a restricted person; and possession of drug paraphernalia in a drug free zone. Stevens was offered a plea in abeyance[1] if he agreed to testify against his friend in the case.

Shortly thereafter, Stevens moved back to his parents' house. He reports that he stopped using cannabis and drinking alcohol, which made his depression worse. Stevens

---

[1] "Plea in abeyance agreement" means an agreement entered into between the prosecuting attorney and the defendant setting forth the specific terms and conditions on which, following acceptance of the agreement by the court, a plea may be held in abeyance. UTAH CODE § 77-2a-1(3).

3

No. 201,997-8
Madsen, J., dissenting

began to spend most of his time playing computer games. He then began to message and webcam with individuals he became close to while gaming. He performed mutual masturbation on camera with these individuals and began to exchange photos, some of which were pornographic in nature.

In July 2006, police executed a search warrant at Stevens' house after he was caught distributing pornographic images of underage children to an undercover detective posing as a 14-year-old. Stevens was 19 at the time, but he posed as a 16-year-old to communicate and share photos with underage individuals.

Stevens was charged with four counts of sexual exploitation of a minor. Stevens later pleaded no contest to four amended counts of voyeurism, a second degree felony. He was sentenced to not less than 1 year nor more than 15 years in prison, but the prison term was suspended. He was sentenced to 210 days in jail, with 90 to be served in jail and the remaining 120 days to be served through a GPS (global positioning system) or work diversion program, and was required to pay $1,032 in fines. He was placed on probation for 36 months. Stevens was also required to register as a group A sex offender, but the court stayed the group A provisions when issuing Stevens' sentence.[2] As part of the plea agreement, the State agreed that upon the successful completion of probation and a 10-year sex offender registration period, all four counts would be dropped down to misdemeanors. Stevens may petition to have his sex offender registration obligations terminated in May 2024. Stevens had his parole terminated early in May 2014.

---

[2] Stevens is also classified as a level 2 sex offender in Arizona.

4

No. 201,997-8
Madsen, J., dissenting

In January 2013, Stevens was charged with driving under the influence, failure to signal, and speeding. He pleaded guilty to the amended charge of impaired driving, and the other two charges were dismissed with prejudice. He was sentenced to a term of 180 days in jail, with 178 days suspended, and offered the opportunity to complete 48 hours of community service in lieu of jail time. This arrest was a violation of Stevens' parole.

Stevens enrolled in law school at the Arizona State University Sandra Day O'Connor College of Law in 2015. Stevens also worked at two law firms and externed at the Maricopa County Office of the Public Defender. In October 2017, Stevens began working for Margaret Vick, whose practice focuses on representing tribal governments. Stevens continued to work for Ms. Vick after graduating from law school.

After graduation, Stevens took the Uniform Bar Exam (UBE) in Arizona, receiving a score of 313. Stevens was then referred to a hearing before the Arizona bar's Committee on Character and Fitness of the Supreme Court of Arizona on April 12, 2019.[3] The Arizona committee concluded that Stevens failed to meet the burden of proving by clear and convincing evidence his current good moral character based on "the serious nature of Applicant's criminal offenses, that he remains on sex offender status, his lack of contrition and complete honesty, and the lack of evidence related to current

---

[3] In Arizona, applicants are not required to complete a character and fitness application prior to being permitted to sit for the bar exam. This means an applicant may sit for the bar exam prior to finding out whether they have been deemed eligible for admission by the state's character and fitness committee, as Stevens did here.

5

No. 201,997-8
Madsen, J., dissenting

good moral character." Mem. from WSBA Regul. Servs. Couns. to Bd. (Aug. 13, 2020),

Attach. C at 412-13. Stevens did not appeal the decision.

In October 2019, following rejection by the Arizona bar, Stevens applied for

lawyer admission by UBE score transfer in Washington. After reviewing his application,

WSBA counsel determined there was a substantial question about whether Stevens

possesses the requisite moral character and fitness to practice law and referred his

application to the Board for a hearing. The Board identified two main issues for Stevens'

hearing: (1) his record of unlawful conduct disclosed in his application and (2) his May

2019 denial by the Arizona committee.

The Board held a hearing on August 21, 2020. A 6-5 majority of the Board

recommended this court deny Stevens' application for admission. The majority board

members decided that "based on Stevens' failure to produce competent professional

testimony that he is rehabilitated, upon Stevens' minimization of his behavior, [and upon

his] failure to fully appreciate the effect his conduct has on victims and failure to take

responsibility for his crimes," Stevens did not meet his burden to show that he has the

good moral character or fitness to practice law. Findings of Fact, Conclusions of Law,

Analysis & Recommendation at 26. In making this determination, the Board looked at

the factors laid out in APR 21(a) as well as the aggravating and mitigating factors set

forth in APR 21(b). The dissenting board members argued that the majority board

members misapplied various APR 21(a) and (b) factors to the facts of this case.

6

No. 201,997-8
Madsen, J., dissenting

Stevens appealed and asks this court to review and reject the Board's

recommendation.

ANALYSIS

Those who apply for admission to the bar "must be of good moral character and

possess the requisite fitness to practice law." APR 3(a). The APRs provide detailed

guidance to assess an applicant's character and fitness. APR 21. Each application is

analyzed on "an individualized basis," and there is "no categorical exclusion of an

applicant who has a criminal or substance abuse history." *In re Bar Application of*

*Simmons*, 190 Wn.2d 374, 378, 414 P.3d 1111 (2018).

However, it is the applicant who bears the burden of establishing by clear and

convincing evidence that he or she is of good moral character and possesses the requisite

fitness to practice law. APR 24.1(c); *Simmons*, 190 Wn.2d at 384; *In re Belsher*, 102

Wn.2d 844, 850, 689 P.2d 1078 (1984); *In re Wright*, 102 Wn.2d 855, 868, 690 P.2d

1134 (1984). The majority analyzes the APR factors and concludes Stevens has met this

burden. I disagree for the following reasons.

1. Reciprocity

First, the majority argues that Stevens' denial from the Arizona bar "should be

given less weight than a denial by a jurisdiction with admissions standards more similar

to our own." Majority at 14. Under APR 21(a)(11), "denial of admission to the bar in

this or another jurisdiction on character and fitness grounds" is a factor we must consider

when determining an applicant's good moral character and fitness to practice law.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 201,997-8
Madsen, J., dissenting

According to the majority, Arizona's explicit presumption against applicants who have been convicted of a felony provides a higher burden of proof for applicants than our state's requirements. Majority at 14. The majority reasons that Arizona's standard is substantially different than our own and thus should be given less weight than a denial by a jurisdiction with laws more comparable to those in our state. But that is at odds with the plain language of APR 21(a)(11), which states that a denial of admission in another jurisdiction is a factor to consider when judging an applicant's moral character and fitness to practice. Trying to determine whether another jurisdiction's standards are comparable to our own is a largely subjective task, and it is unlikely that wording in every state's admission rules will be the same. What is the same, and the reason APR 21(a)(11) exists, is that admission rules in every state require the applicant to establish character and fitness to practice law. Reciprocity exists in many aspects of admission to practice and lawyer discipline. The majority's "pick and choose" approach is unwarranted and in tension with existing rules.

The majority justifies its ad hoc approach to APR 21(a)(11) by pointing to language by the Arizona Supreme Court that in some cases a showing of rehabilitation from a felony conviction may be virtually impossible. Majority at 15 (quoting *In re Hamm*, 211 Ariz. 458, 464, 123 P.3d 652 (2005)). But in *Hamm*, the prospective bar applicant shot two individuals at close range. The Arizona Supreme Court's strong language was in response to an applicant who was convicted of attempted murder. *Hamm*, 211 Ariz. at 464. Nevertheless, the Arizona court has emphasized that even a

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 201,997-8
Madsen, J., dissenting

conviction for a serious crime does *not* constitute a per se disqualification and that each case must be scrutinized on its own merits. *In re King*, 212 Ariz. 559, 563, 136 P.3d 878 (2006).

The majority also argues that Arizona's standard creates a subjective standard that will be "unduly influenced by unlawful considerations." Majority at 15-16. But in the next sentence, the majority affirms the principle that bar applicants should be judged on an individualized basis. *Id.* at 16. It is unclear how Washington's individualized inquiry is any less subjective than the Arizona standard. A brief look at the Arizona committee's decision in this case affirms the similarities between Arizona's standard and our own.

The Arizona committee denied Stevens' application. Although the committee applied the presumption against applicants who committed felony offenses, it also considered other factors, including the serious nature of the offenses, the fact that Stevens still remains on sex offender status, his lack of contrition, and lack of evidence related to good moral character. Similar to our process, the Arizona committee considered the serious nature of Stevens' past conduct and concluded that he had not met his burden of proving good moral character and rehabilitation. Rather than acting as an outright bar, the felony conviction was a factor taken into consideration when determining whether the applicant had met his burden. The majority reads too much into Arizona's presumption against felons.[4]

---

[4] As the two opinions in this case (majority and dissent) illustrate, we disagree about how to interpret and apply Arizona's presumption. The majority gives no weight to the Arizona bar's

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 201,997-8
Madsen, J., dissenting

In fact, this presumption is not dissimilar from our state's standard. To be admitted to the bar, an applicant bears the burden to show that he is of good moral character and fitness. An individual who has a criminal conviction necessarily has a higher burden to show his fitness than someone who does not. The majority correctly points out that there is no categorical exclusion of an applicant who has a criminal history. Majority at 14 (citing *Simmons*, 190 Wn.2d at 378). However, there is a middle ground between categorically excluding an individual based on a criminal conviction and not considering the conviction at all. Thus, like Arizona, our standard creates a presumption against felons that is the applicant's burden to overcome.[5]

In addition, the majority attempts to create a distinction between the rules for bar admission and the Rules for Enforcement of Lawyer Conduct (ELCs), arguing they are not comparable because the APRs do not contain a presumption of reciprocity while the ELCs do. *Id.* at 16-17. It argues that a plain reading of the rules requires us to conclude that we cannot read reciprocity into the APRs. *Id.*

However, even if not explicit, APR 21(a)(11) strongly suggests the importance of reciprocity. Moreover, the logic behind the ELCs and the APRs is similar. In the

---

decision not to admit Stevens in part based on his past criminal history. Instead, I would respect the Arizona decision as provided by APR 21(a)(11).

[5] We apply a similar rule in the disciplinary context. A lawyer may be subject to discipline for committing an act of misconduct. ELC 13.1. It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. RPC 8.4(b). In both the attorney discipline and bar admissions contexts, our job is to determine whether a lawyer should be allowed to practice in our state. Thus, in both instances a felony conviction creates a presumption against the individual.

10

No. 201,997-8
Madsen, J., dissenting

disciplinary context, our rules require a lawyer who has been disciplined in another jurisdiction to show why identical discipline should not be ordered in Washington. ELC 9.2(c). The lawyer to be disciplined bears the burden of showing cause for why identical discipline should not be ordered. ELC 9.2(e). This rule is based on the American Bar Association's *Model Rules for Lawyer Disciplinary Enforcement* (2002) and has been adopted by other states as well. *See, e.g.*, ARIZ. R. SUP. CT. 57(b). As the comments to the ABA *Model Rules* note, "[t]he spectacle of a lawyer disbarred in one jurisdiction yet permitted to practice elsewhere exposes the profession to criticism and undermines public confidence in the administration of justice." MODEL RULES, *supra*, r. 22 cmt.

APR 21(a)(11) reflects a similar concern. Under this rule, an applicant who has been denied admission in another jurisdiction on character and fitness grounds is not automatically disqualified from admission in our state, but the prior denial is a factor that we are required to consider. The majority argues that we have no presumption of reciprocity and thus concludes that a denial in another state with a slightly different standard should be given less weight. Majority at 17-18.

Taking this approach encourages the possibility that an applicant may forum shop after being denied admission in another state.[6] In fact, under the majority's logic, individuals with past felony convictions should be encouraged to apply in our state

---

[6] The majority criticizes our discussion about forum shopping. Majority at 13 & n.3. However, it is certainly our duty to consider the implications of our analyses and conclusions for future cases. Here, the majority's decision will increase the occurrence of forum shopping—which should be of concern to this court.

11

No. 201,997-8
Madsen, J., dissenting

because of our lack of an explicit presumption against felons. As noted above, our role in the bar admission process is to protect the integrity of the legal profession and to protect the public's trust in our profession. I am concerned that the majority's weighing of this factor disregards reciprocal decision-making with other states and encourages applicants to apply for admission in Washington, hoping for a more lenient process than in other states.

 2. <u>Applicant's Age at the Time of Conduct</u>

Next, the majority concludes that Stevens' age at the time of conduct is a mitigating factor because his brain was still developing when the conduct at issue occurred. Majority at 23-25. The majority cites to our recent criminal juvenile sentencing cases, where we relied on social science to conclude that age is a consideration when imposing a sentence. *Id.* (quoting *State v. O'Dell*, 183 Wn.2d 680, 691-92, 358 P.3d 359 (2015), and citing *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 313, 321-23, 482 P.3d 276 (2021)).

In *Monschke*, a plurality of this court noted that "sentencing courts must have discretion to take the mitigating qualities of youth . . . into account" and that "[w]e leave it up to sentencing courts to determine which individual defendants merit leniency for these characteristics." 197 Wn.2d at 326. However, unlike in *Monschke*, our review in this case is not to determine whether Stevens received an appropriate sentencing in a criminal case. He has already been sentenced. Determining whether an applicant

12

No. 201,997-8
Madsen, J., dissenting

possesses the moral character and fitness to practice law is not a decision about appropriate punishment.

Further, the majority simply proceeds without pause or reflection, to apply this court's still-evolving juvenile sentencing cases to the bar admissions process. The majority recognizes that such cases are not "directly" applicable yet relies on a passing statement in *Simmons* that social science "must" play a role in our decisions. Majority at 24. This statement from *Simmons* concerned the science regarding the relationship between sobriety and conduct and the likelihood of recidivism. 190 Wn.2d at 389. Moreover, *Simmons* does not require reliance on social science, and I have found no other decision in the bar admission context mandating it, let alone relying on distinguishable cases like *Monschke*—a plurality decision limited to the offenses at issue (aggravated murder requiring life without parole) for specific defendants (19- and 20-year-olds). We must also acknowledge that studies on the brain maturation and behavior connection for late-adolescence is imprecise.

More specifically, applying neurodevelopmental science in the criminal context, as we did in *Monschke*, accomplishes our goal of providing individuals a chance to rejoin society after they have demonstrated rehabilitation. Our role in the bar admissions context is not analogous. That role requires us to ensure each lawyer admitted has the good moral character and fitness to practice. We are not determining a prison sentence. We are determining whether an applicant is currently fit to practice law. The role of a lawyer in service to their client is venerable. Lawyers are often entrusted with the most

13

No. 201,997-8
Madsen, J., dissenting

important aspects of our lives, and individuals often need a lawyer when they are at their

most vulnerable. Moreover, lawyers serve not only their clients but the public at large.

*See In re Disciplinary Proceedings Against Huddleston*, 137 Wn.2d 560, 573, 974 P.2d

325 (1999) ("[L]awyers owe an ethical duty [to their clients,] to the legal system, to the

legal profession, and to the general public."). For these reasons, we must hold lawyers to

a higher standard.

Our role in this process is not to determine whether an individual should receive a

more lenient sentence because of their young age at the time they commit a crime.

Rather, our job is to protect the public interest and ensure each individual admitted to the

bar has the fitness to practice. In my view, therefore, reliance on juvenile criminal

sentencing is misplaced. Nevertheless, it would behoove the court to independently

discuss whether and how to use that case law before simply doing so.

In addition, Stevens still faces ongoing legal obligations as a result of his past

decisions. He was an adult at the time of his actions and should be held responsible for

those actions. For these reasons, I would hold that age is not a mitigating factor here.

3. Ongoing Sex Offender Status

Third, the majority largely ignores the fact that Stevens is still required to register

as a sex offender until at least 2024.[7] The majority notes he has complied with his

registration requirements but fails to consider this ongoing legal obligation as a factor

---

[7] Utah sex offender laws allow individuals to petition the court to remove an offender from the registry if at least 10 years have passed from the day on which the offender was placed on probation. UTAH CODE ANN. § 77-41-112(1)(b)(ii).

14

No. 201,997-8
Madsen, J., dissenting

weighing against Stevens' admission.  Majority at 26.  Although Stevens' conduct was

not recent, he has a continuing legal obligation that he has not fulfilled.[8]

Even after satisfying this obligation, Stevens' registration requirement will not

automatically be cleared from his record.  Stevens will have to apply for expungement

when he becomes eligible to do so.  UTAH CODE ANN. § 77-41-112.

If Stevens moves to Washington, he will have to register as a sex offender here as

well.  *See* UTAH CODE ANN. § 77-41-105(2)(b) ("An offender required to register under

[sex offender laws] who is no longer under supervision by the department shall register in

person with the police department or sheriff's office that has jurisdiction over the area

where the offender resides."); RCW 9A.44.130(4)(a)(iv) ("Sex offenders . . . who move

to Washington state from another state or a foreign country must register within three

business days of establishing residence.").[9]  Stevens is currently registered as a sex

offender in Arizona, but he plans to move to Washington if admitted to the bar.  Here, sex

offenders are placed into one of three classifications.  *End of Sentence Review*

*Committee*, WASH. STATE DEP'T OF CORR.,

---

[8] Stevens and amici argue that based on scientific evidence, people who commit sex offenses at a young age are extremely unlikely to reoffend.  However, even if Stevens is highly unlikely to offend, the fact remains that Stevens is still required to register as a sex offender at this time.

[9] The majority concludes that the mere existence of an ongoing legal obligation is not an aggravating factor weighing against admission.  According to the majority, the "dissent's approach is not supported by the APRs or applicable precedent."  Majority at 27.  However, the majority ignores APR 21(b)(9)(ii), which states that evidence of rehabilitation, recovery, or remission including compliance with a disciplinary, judicial, or administrative order arising from misconduct may be a mitigating or aggravating factor.  Stevens has yet to satisfy all of his legal obligations.  Under APR 21(b)(9)(ii), this is an aggravating factor, which I would take into consideration.

15

No. 201,997-8
Madsen, J., dissenting

https://www.doc.wa.gov/corrections/justice/esrc.htm (last visited Oct. 27, 2022). Stevens appears likely to be classified as a level 1 risk ("low risk of sexual re-offense within the community at large"), [10] and thus will be required to report his offender status to local law enforcement but will not be included on the sex offender search database website. *See, e.g.*, *Sex Offender Registration Information*, KING COUNTY, https://kingcounty.gov/depts/sheriff/sex-offender-search.aspx (last visited Oct. 27, 2022).

Stevens has previously informed law school friends and his employer about his offender status, but it appears he may have done this because of community notice requirements. *See, e.g.*, Verbatim Report of Proceedings at 198 ("They were going to receive in their mailbox everything, and so I felt it would benefit . . . to hear it from me, and I informed [my law school friends] I was on the sex offender registry."), 210 ("I was not involved in the decision making, but [my boss] did notify me she was going to inform her clients before she did."). When asked if he would disclose this information to future clients, Stevens stated that it would be "dependent on the client." *Id.* at 209. If Stevens is admitted to the bar, there is no mechanism for ensuring that he will notify any of his clients about his sex offender status.

---

[10] "The vast majority of registered sex offenders are classified as Level 1 offenders." *Sex Offender Registration Information*, KING COUNTY, https://kingcounty.gov/depts/sheriff/sex-offender-search.aspx (last visited Oct. 27, 2022).

16

No. 201,997-8
Madsen, J., dissenting

We have similarly previously rejected applicants who were still on parole at the time of their application.[11]  In my view, we can maintain public trust and protect the public interest by requiring individuals to fulfill their ongoing legal obligations before being admitted to the bar.  I would find the fact that Stevens is still required to register as an offender to be a strong aggravating factor.

4.  <u>Lack of Recent Evaluation</u>

Finally, the majority concludes that the Board improperly relied on the fact that Stevens did not present a current mental health evaluation.  Majority at 32.  The majority notes that it may be unlawfully discriminatory for us to require an updated health evaluation prior to admitting Stevens to the bar.  *Id.* at 33.

I do not agree that is the case when the applicant raises the issue of their mental health.  As noted, it is the applicant's responsibility and burden to prove that they have the mental fitness to practice law.  In this case, Stevens' former doctor Richard Ferre testified that he had concerns about Stevens' ability to manage life at this time.  Given Stevens' past history, in addition to Dr. Ferre's expressed concerns about Stevens' ability to handle stress, I find it concerning that there is no recent evaluation for our review.  With the record before us, it is difficult to determine whether Stevens has taken clear ownership of his actions and where he stands in terms of his mental health.

---

[11] Our court made a similar finding in the disciplinary context, holding an attorney who was disbarred could not be reinstated to the bar until he had finished serving his parole.  *In re Disciplinary Proceedings Against Walgren*, 104 Wn.2d 557, 571, 708 P.2d 380 (1985).

17

No. 201,997-8
Madsen, J., dissenting

CONCLUSION

To be admitted to the Washington bar, Stevens bears the burden of showing clear and convincing evidence that he possesses the good moral character and fitness to practice law. In making this determination, we are required to balance Stevens' past actions against those more recent acts and to consider evidence of rehabilitation. There is no specific time period of rehabilitation, activity one must perform, or exact recovery path one must follow. There is no bright-line rule when evaluating applicants. *Simmons*, 190 Wn.2d at 387. Rather, we must perform an individualized inquiry of the applicant's character and fitness. It unmistakably rests on the applicant to meet this burden and demonstrate that they are of good moral character and possesses the requisite fitness to practice.

Today, the majority balances the factors and concludes that Stevens should be admitted to the bar. I cannot agree. The fact that Stevens must register as a sex offender until he is eligible to petition for remission is particularly concerning, especially because one of this court's key responsibilities is to "guard the public and its confidence in the judicial system." *Belsher*, 102 Wn.2d at 850. Additionally, although Stevens has stated that he continues to struggle with his mental health, he has not provided a current report from a medical or mental health provider or any other evidence regarding his status. Finally, I believe that lowering the weight given to the denial by the Arizona bar's Committee on Character and Fitness will create an unfortunate precedent that encourages applicants with a history of felony charges to forum shop in our state.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 201,997-8
Madsen, J., dissenting

None of these concerns is by itself a categorical bar to admission. However, given the totality of these factors, I would hold that Stevens has failed to show by clear and convincing evidence that he has good moral character and possesses the moral fitness to be admitted to the Washington bar at this time. That is not to say that Stevens is forever precluded from applying to the Washington bar or that his past actions are an indelible mark clouding his future. While we must judge an applicant based on their past, the past does not control the future. Prior applicants have shown a path forward. *E.g.*, *Simmons*, 190 Wn.2d at 386-99. Undoubtedly, other paths can be forged. It is my hope that if and when Stevens addresses the concerns discussed above (satisfying his continuing legal obligations among them), he would reapply for admission.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Whitener, J.

19